LaSALLE CARTAGE CO. INC. v. JOHNSON BROTHERS
WHOLESALE LIQUOR COMPANY.

225 N. W. 2d 233.

December 27, 1974—No. 44459.

*Shanedling, Phillips, Gross & Aaron* and *Felix M. Phillips,* for appellant.

*Zeigler, Colvin & Petersen* and *Roger E. Petersen,* for respondent.

Heard before Sheran, C. J., and Peterson, Kelly, and Todd, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This is an action to recover damages allegedly sustained by plaintiff, LaSalle Cartage Co. Inc., based on (1) theories of conversion and wrongful termination of a lease as a result of defendant Johnson Brothers Wholesale Liquor Company's removal of plaintiff's radio antenna from a tower atop defendant's building, and (2) theories of breach of warranty of good and marketable title by defendant Midwest Patrol, Inc., in its sale to plaintiff of the tower to which the antenna was attached.[1] The trial court ruled as a matter of law that the purported sale of the tower by Midwest was of no force or effect, title having previously vested in Johnson Brothers (hereinafter referred to as defendant). Thus, the conversion claim was determined adversely to plaintiff. The court also ruled as a matter of law that plaintiff's use of the tower and space on the third floor for a transmitter was based on a month-to-month lease, rather than a license, so that defendant's failure to give written notice of termination was a violation of statute (Minn. St. 504.06). The jury, by special interrogatories, determined that plaintiff sustained damages of $2,000 by reason of this failure to give proper notice of termination of the lease, and of $500 by reason of Midwest's breach of warranty. Defendant appealed from an order denying its motion for a new trial or for judgment notwithstanding the verdict. We affirm.

---

[1] The second defendant, Midwest Patrol, Inc., is not a party to this appeal.

This case revolves around the ownership and use of a 100-foot radio tower affixed to the top of a 3-story building in St. Paul owned and used by defendant. Midwest had been a tenant of a portion of the building until early 1969 and had erected and used the tower with defendant's permission during its tenancy.

Plaintiff, a company engaged in general local cartage, acquired a new account in March 1969 which required radio communications between its office and its trucks. Plaintiff's search for an antenna tower led to discovery of the tower here in question, which it learned was for sale by Midwest. Before purchasing the tower, one of plaintiff's officers, John Dean, met with Lynn Johnson, one of defendant's officers. According to Dean, Johnson agreed that the tower could remain after plaintiff purchased it, and that a yearly rental could be worked out. Furthermore, according to Dean, no written agreement was involved because he and Johnson had previously transacted business orally. Lynn Johnson testified that the agreement reached at this meeting was for plaintiff's use of the tower itself, not just the roof, and that a monthly rental of $35 per month was agreed to about 5 weeks later. He also testified that Dean had not informed him at that time that plaintiff was purchasing the tower from Midwest.

On May 8, 1969, subsequent to the above agreement, plaintiff "purchased" the tower from Midwest for $500. Plaintiff then affixed its antenna to the tower and installed its transmission equipment in a room in the building. Plaintiff's president, Harlan Lindman, testified that no rent was paid because of a collateral agreement with a third party giving that party the right to mount its antenna on the tower in exchange for its assumption of the rent obligation. The trial court instructed the jury that this arrangement, never communicated to defendant, was of no legal significance.

In September 1971, Mitchell Johnson, also an officer of defendant, telephoned John Dean at plaintiff's offices and told him they had 3 weeks to take their equipment off the building. The date of the call is in dispute, Mitchell Johnson testifying it was early

in September, Dean testifying it was about the 19th or 20th of September. Lindman testified that Dean told him of the call, and he immediately began looking for another location for the antenna.

On September 23, 1971, plaintiff's antenna was disconnected and replaced on the tower by defendant's TV antenna. Depending on whose estimate of the date of the first phone call is accurate, this disconnection occurred anywhere from 3 days to 3 weeks later. Lindman went to defendant's building to investigate and was told by Mitchell Johnson that the reason for the disconnection was plaintiff's failure to pay rent. Service was restored a day later, and discussions regarding rent and ownership of the tower took place between Mitchell Johnson and Lindman during the next few days. During a meeting on September 28, 1971, Johnson demanded payment of all back rent through September 30, at $35 per month, totaling $980, which plaintiff paid later that day.

On October 1, 2 days later, without any further notice, defendant disconnected plaintiff's antenna for the second and final time. Plaintiff thereafter removed its equipment and antenna from the building and proceeded to transfer it to a tower in Bloomington. Lindman testified that radio communications were inoperative for 10 working days before being restored through use of the tower in Bloomington.

Lindman testified with respect to plaintiff's cost of operating the account which was dependent on radio communications, introducing into evidence records to establish plaintiff's average income per hour per week. He explained to the jury how his records were kept and showed how average income per hour dropped $3 during the 10 working days when communications were out of operation. Multiplying this figure by the number of driving hours during this period, he estimated the loss sustained by plaintiff to be $3,018.33.

The central issues on this appeal are:

(1) Whether the trial court erred in finding as a matter of

law that the arrangement between plaintiff and defendant constituted a lease of real estate rather than a license.

(2) Whether the trial court abused its discretion in granting plaintiff's motion to amend its complaint after the case was called for trial to allege wrongful termination of a lease, in addition to the original claim of conversion.

(3) Whether the jury verdict of $2,000 damages is unjustified and excessive.

1. Defendant argues that it retained exclusive possession of all of its building (including the roof), that the parties intended the arrangement to be terminable at will, and that therefore the plaintiff was a licensee rather than a tenant, and that the trial court erred in deciding the converse. Plaintiff argues that since it had a right of access to the roof, as well as a room on the third floor where it had its transmitter, defendant did not retain exclusive possession and that this fact, coupled with the intent of the parties, justified the trial court's finding that the arrangement constituted a tenancy at will as a matter of law.

While the facts are somewhat in dispute, certain facts cannot be successfully disputed by defendant. The answer to whether the arrangement between the parties was a month-to-month tenancy or a license depends upon the intention of the parties. Here Lynn Johnson testified that a monthly rental of $35 was agreed to. From his testimony, this was for rent for the use of the tower. From the testimony of all parties, this rent would also apply to the space for the transmitter, which was located on the third floor in a small room by itself under cover. Mitchell Johnson testified: "I understood that LaSalle Cartage was renting the space on the third floor for their transmitting equipment together with their antenna on top of our tower." In another instance, Mitchell Johnson was asked:

"Q. * * * Then your company on October 1, 1971 did in fact disconnect the plaintiff's tower, or antenna?

"A. Yes, we did.

"Q. In other words, on that date your company terminated this month-to-month lease, right?

"A. Yes."

Thus, throughout the testimony of the parties, the term monthly rental and rents or rent is used to describe and refer to the arrangement between plaintiff and defendant. It obviously was understood that plaintiff would have the right to enter the building to repair and maintain the transmitter and the antenna. Just the arrangement itself, if nothing else had been said by the parties, would give rise by implication to the fact that plaintiff would have the right to enter and repair the equipment. But Lynn Johnson in referring to their first meeting about using the tower and space on the third floor in April or May, 1969, testified that he said "I don't know how much trouble it will be. Go ahead and try it, and in a few weeks we'll see if there's any grief, how much maintenance your coming in and out of the building, and then we'll set a price."

Here businessmen referred to the arrangements as a month-to-month lease and the payments for use of the tower and the space in a small room on the third floor as rents. Clearly the trial court could assume that these words were knowingly used to express the intent of the parties that an oral month-to-month lease with all the rights and obligations incurred thereby was indeed intended. The record is not clear as to whether or not plaintiff had exclusive possession of the room housing the transmitter but of necessity it did have exclusive possession of the space used for the transmitter.

One of the difficulties with this case is that defendant did not by pleading or otherwise raise the defense that the arrangement between plaintiff and defendant was a license until after plaintiff had rested and just before the case was to go to the jury. Defendant's officers characterized the payments demanded of plaintiff as rents, and the arrangement between the parties as being on a month-to-month basis. They gave no other testimony from which it could be inferred that these characterizations were

inappropriate. Not only did defendant fail to plead or otherwise claim that the arrangement between the parties was a license, it also characterized the arrangement in its answer both as an oral lease and a rental agreement and referred to the payments to be made by plaintiff as rental payments. We conclude that these allegations are admissions that the arrangement between plaintiff and defendant constituted an oral lease from month to month. No useful purpose would be served in discussing the authorities distinguishing licenses from oral leases because here the case was tried by all concerned on the theory that plaintiff had an oral lease from month to month, and by allegations in its answer defendant admitted this to be the case. The trial court therefore correctly ruled that there was an oral agreement for a month-to-month use and that plaintiff was entitled to a written notice of termination of lease. Admittedly, no written notice was given and plaintiff was entitled to damages.

2. We do not conclude that the trial court abused its discretion in granting plaintiff's motion, made after the case was called for trial, to amend its complaint to allege wrongful termination of a lease, in addition to the claim of conversion.

The authors' comments to Rule 15.01, Rules of Civil Procedure in 1 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 516, state:

"The provisions in Rule 15.01 for amendment of pleadings preserve the liberal practice developed in Minnesota under code procedure. Insofar as leave of court is required, the rules specifically provide that the court in granting leave to amend a pleading shall do so freely when justice so requires. In this context, justice requires the presentation of the claim or defense on the merits. As such, unless prejudice going to the merits has been established, the amendment should be permitted."

Under this rule, the exercise of the trial court's wide discretionary powers for liberal granting of an amendment may change the legal theory of the action. Colstad v. Levine, 243 Minn. 279, 67 N. W. 2d 648 (1954). The action of the trial court in grant-

ing or denying a motion for amendment will not be reversed except for a clear abuse of discretion. Dale v. Pushor, 246 Minn. 254, 75 N. W. 2d 595 (1956).

Defendant has failed to establish prejudice resulting from the amendment. The prayer for relief was not increased and the issues with respect to damages are practically the same under either theory. With respect to liability, both the conversion theory and the lease-termination theory involve questions of the agreements, acts, and intentions of the same four persons who in fact testified. In the absence of a showing of prejudice going to the merits, allowing the amendment was not an abuse of discretion.

3. Defendant also claims that the damages awarded by the jury are unjustified and excessive. Whether a verdict should be set aside as excessive rests largely in the discretion of the trial court, and it should not be interfered with on review unless there is a showing of clear abuse of that discretion. See, Larson v. Degner, 248 Minn. 59,. 78 .N. W. 2d 333 (1956). Plaintiff's president, Lindman, introduced properly documented business records indicating business losses of $3,018.33. The jury was properly instructed on plaintiff's duty to use all reasonable efforts to mitigate its damages and returned a verdict awarding damages of $2,000 against defendant. Apparently the jury considered mitigation in reducing the amount sought by plaintiff by one-third, and an award of that amount is reasonably supported by the evidence.

Affirmed.