Robert S. CARNEY, Appellant,

v.

**CENTRAL LIFE ASSURANCE
COMPANY, Respondent.**

No. C2-84-1997.

Court of Appeals of Minnesota.

April 16, 1985.

Robert S. Carney, pro se.

Thomas Tinkham, Bruce Ranta, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

RANDALL, Presiding Judge.

This matter came before the trial court on cross motions for summary judgment, and on appellant's motion to amend his complaint. The trial court denied appellant's motion to amend his complaint and granted summary judgment against appellant on the merits. We affirm.

## FACTS

Appellant Robert Carney took out a life insurance policy with respondent Central Life Assurance Company ("Central") in 1935 which required monthly premiums be paid for 40 years. After this period Carney was to receive $50 monthly payments for 10 years or life, whichever is longer. The policy contained a provision for an immediate single sum settlement, which option could be unilaterally imposed by Central if, during the life of the policy, the insured's loans depleted the guaranteed cash value ($6,000) past a certain point. The point at which Central could settle with its customer for one lump sum is expressed by the following formula contained in the policy:

At the end of the endowment period any indebtedness not immediately paid to the Society shall reduce each Monthly Income payment in the proportion of the total indebtedness to the fact amount of this Policy, provided, *however, that if such Monthly Income payments would be reduced to less than ten dollars each*

*the face amount of the Policy less any indebtedness will be paid in one sum.* (Emphasis added).

After 40 years, Carney owed Central more than $5,800 for loans against the policy. It was Carney's understanding that Central would apply the $50 monthly payments (of which $6,000 was certain—120 months × $50) until the loans were paid. Then Carney felt that as long as he lived, he would receive $50 per month. Because the insurance company continuously retained Carney's policy during the unbroken period of his policy loans, Carney was either unaware of the above provision or forgot about it by the end of the 40 years.

In October 1974, Carney wrote to Central to inform them that he had turned 65 and asked whether he would be receiving $50 monthly payments pursuant to the insurance policy. Central wrote back explaining that, assuming the three remaining premiums were paid, Carney would be entitled to $769, the difference between the maturity value plus dividends and the unpaid loan taken against the policy. Central did not tell Carney that if he reduced the outstanding loan to just under $5,000 (so that $40 a month for 10 years would be sufficient to repay the loan) he would then receive $10 a month for the next 10 years certain and thereafter $50 a month for life. Central only told him about the lump sum settlement.

Carney was informed that he would not be entitled to the $50/monthly payments unless he first repaid the loans against the policy, but the explanation did not include his right to partially repay the loan and let the 10 year guaranteed payments take care of the rest. If he did not repay anything on the loans, he would receive $769 in a single lump sum payment and no monthly payments in any amount.

Carney insists he was not informed that he could make a partial repayment of the loans so as not to trigger the lump sum alternative and keep alive the monthly annuity option.

Carney did not repay the loans in whole or in part before the end of the endowment period, nor did he pay the last three premiums. Two of the premiums were added to the loan amount and the last premium was deducted from the maturity value, leaving a net cash value of $499.54.

On March 24, 1975, in accordance with the terms of the policy, Central sent Carney a $499.54 check along with a letter explaining the payment of the policy proceeds. The letter also asked Carney to return his policy, "as it is no longer of any value." Three months later when Carney still had not cashed the check, Central again wrote offering to reissue the check under the current date in case Carney lost the original. Carney did not respond to this letter, nor did he cash the check.

In October 1975, Central wrote to Carney and attached an additional check of $57 as a loan interest refund which should have been included as part of Carney's lump sum payment. Appellant again made no effort to inform anyone at Central that he disputed the lump sum payment.

In April 1976, Central wrote to Carney and included two replacement checks for those previously issued to him. Carney retained all four checks without cashing them, and without indicating to anyone at Central that he disputed the payment.

Finally, eight years later, in September 1983, Carney filed suit claiming he is entitled to monthly payments for life under the insurance contract, once his policy loan is repaid by means of the company keeping the entire $50 per month payment for 10 consecutive years.

Central filed a motion for summary judgment on the basis that Carney's claim was barred by the six-year statute of limitation on contract actions. Carney filed a cross motion for summary judgment and an alternative motion to amend his complaint to assert allegations of fraud, which would prevent the running of the statute of limitations until the fraud was discovered.

The trial court granted Central's motion for summary judgment, denied Carney's motion for summary judgment and alterna-

tive motion to amend his complaint, and dismissed the action.

## ISSUE

Does the statute of limitations bar Carney's cause of action against Central?

## ANALYSIS

In reviewing the entry of summary judgment, this court must determine whether there are genuine issues of material fact to be litigated, and whether the trial court erred in applying the law. Minn.R. Civ.P. 56.03. This court must view the evidence in the light most favorable to the party against whom the motion for summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240 (Minn.1982).

Carney claims the trial court erred in applying the statute of limitation, Minn. Stat. § 541.05, subd. 1 (1982), because the insurance policy has no maturity date and because, since all premiums were paid, the contract is effective until Carney's death. However, all premiums were not paid by the end of the 40-year period.

More importantly, Carney's cause of action, if any, arose between his turning 65 in 1974 and April of 1976 when it was clear to Carney that Central rejected his interpretation of the policy and was claiming the right to unilaterally impose a lump sum settlement on him whether he agreed to it or not.

During the approximately two years of correspondence between Carney and Central, Carney may well have had a cause of action for breach of contract. Central had not informed him that he would not have to repay the outstanding $5800 in policy loans in full to preserve his right to monthly payments for 10 years certain, and then thereafter as long as he lived. His right to make a relatively modest partial repayment of the outstanding loan (just enough to get the outstanding loan down to where $40 a month for 10 years would repay it in full) was a substantial right. Central legitimately had Carney's policy in their possession, which is routine in the industry when the insured takes out a policy loan. It would have been the better practice for Central to inform Carney in writing of the single sum settlement provisions and his alternatives which were the following three: a) do nothing and receive the lump sum settlement; b) pay up all due premiums and then fully repay the outstanding policy loans and receive $50 a month for 10 years certain and then thereafter until death; c) pay up all due premiums and then repay enough of the outstanding loans so that $40 per month for 10 years would amortize the balance and the insured would be entitled to $10 a month for 10 years and then $50 a month thereafter until death.

Carney claims that Central unilaterally changed the terms of the policy when it required that he accept a lump sum settlement instead of allowing him to opt for the monthly annuity payments.

Central argues it did not unilaterally change the terms of the policy since the term for partial repayment was in the policy from the inception. If a cause of action, such as not properly informing the insured, arose against Central, that cause of action arose before September of 1977. The trial court was not clearly erroneous in so finding. The trial court properly found that Carney knew, or should have known, that Central was in breach of the contract as Carney interpreted it as early as March, 1975, and no later than April, 1976.

Carney's legal right, upon the offer of the lump sum payment, was to sue Central for breach of contract, and he had six years to bring the suit. Minn.Stat. § 541.05, subd. 1(1) (1982). He did not have the legal right to ignore all offers by Central to pay the cash value of the policy, and now claim that the six-year statute of limitations was for some reason tolled.

Since Carney did not bring suit within the six-year statutory limitation period, although it may have had merit, his claim must be barred.

## DECISION

We affirm the decision of the trial court in finding that Carney's cause of action, if

any, arose more than six years prior to September of 1983 when the lawsuit was commenced and thus is barred by the applicable statute of limitations.

Affirmed.