Sidney SCHUYLER, Appellant,

v.

**METROPOLITAN TRANSIT COMMISSION, Respondent.**

No. CX–85–669.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Michael E. Stephan, Hopkins, for appellant.

Michael D. Christenson, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and LESLIE, JJ.

## OPINION

PARKER, Judge.

Appellant Sidney Schuyler alleges that he was wrongfully discharged by respondent Metropolitan Transit Commission (MTC) for seeking workers' compensation benefits. MTC moved for dismissal or, in the alternative, summary judgment. One of MTC's arguments before the trial court was that Schuyler's complaint should be dismissed because he failed to exhaust the grievance procedures under the collective bargaining agreement before bringing this suit. The trial court granted summary judgment to MTC on different grounds, holding that Schuyler's claim for breach of his employment contract was barred by Minn.Stat. § 541.07(5) (1982), the two-year statute of limitations for wage actions; that his claim asserting retaliatory discharge in violation of Minn.Stat. § 176.82 (1982) was unsupported by the facts; and that Minn.Stat. § 336.1–203 (1982) was inapplicable because this case did not involve a contract for the sale of goods. Schuyler has appealed to this court. Because we find that Schuyler should have exhausted the grievance and arbitration procedures before bringing this action, we affirm the trial court's grant of summary judgment to MTC.

## FACTS

In 1979, Schuyler became a member of Local 1005 of the Amalgamated Transit Union when he was employed by MTC as a bus driver. The terms and conditions of his employment were governed by a collective bargaining agreement (agreement) executed between his union and MTC. Under the terms of this agreement, MTC agreed that any discipline of its employees, including suspensions or discharges, "shall be just and merited." Article 5, Section 1. The agreement also contained grievance and arbitration procedures, which were to be followed in the event of "[a]ny dispute or controversy, between the MTC and an employee covered by this Agreement, * * * regarding the application, interpretation, or enforcement of any of the provisions of this Agreement * * *." Article 5, Section 3.

On April 16, 1981, Schuyler fell while exiting from a bus, injuring his back. He worked until December 1981 when he was hospitalized for sixteen days with continuing back problems. He received workers' compensation benefits for the period of his hospitalization. In accordance with Article 16, Section 6 of the collective bargaining agreement, MTC requested that Schuyler submit to an examination by a physician of its choosing. On January 7, 1982, Schuyler was examined by this physician, who concluded that Schuyler "could return to regular work at this time." Schuyler's treating physician, however, disagreed and opined on February 1, 1982, that his patient "continues to be temporarily totally disabled * * *." MTC notified Schuyler that based upon the opinion of its physician, he was able to work and that the company considered him absent without leave. He was informed that he would be terminated in accordance with MTC rules if he did not return to work within seven days. When Schuyler failed to return to work on March 4, 1982, he was discharged.

Schuyler subsequently filed a claim petition for workers' compensation benefits in October 1982, which was settled by stipulation. In May 1984, he requested rehabilitation benefits under the Workers' Compensation Act, which were denied in October 1984 after a hearing before a rehabilitation specialist. Schuyler served MTC with the present action on November 27, 1984. This appeal followed the trial court's grant of summary judgment to MTC.

## ISSUE

Was Schuyler required to exhaust the grievance procedures provided by the collective bargaining agreement before bringing an action under Minn.Stat. § 176.82 for wrongful discharge?

## DISCUSSION

In reviewing an entry of summary judgment, this court must determine whether there are genuine issues of material fact to be litigated, and whether the trial court erred in applying the law. Minn.R. Civ.P. 56.03; *Carney v. Central Life Assurance Co.*, 366 N.W.2d 351, 353 (Minn.Ct. App.1985). The evidence must be viewed in the light most favorable to the party against whom the motion for summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240 (Minn.1982).

Minn.Stat. § 176.82 (1982) provides:

Any person discharging or threatening to discharge an employee for seeking workers' compensation benefits or in any manner intentionally obstructing an employee seeking workers' compensation benefits is liable in a civil action for damages incurred by the employee including any diminution in workers' compensation benefits caused by a violation of this section including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled. Damages awarded under this section shall not be offset by any workers' compensation benefits to which the employee is entitled.

*Id.* Schuyler asserts he was wrongfully discharged after relying on his own doctor's advice and refusing to report to work and that this discharge was in retaliation for pursuing his rights under the Workers' Compensation Act.

As a general rule, before bringing an action against an employer for violation of a collective bargaining agreement, an employee is required to exhaust the grievance procedures. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Cunningham v. Federal Cartridge Corporation*, 265 Minn. 534, 122 N.W.2d 208 (Minn.1963). If an employee is allowed to circumvent procedures mutually agreed upon for handling grievances by filing suit in the first instance, the collective bargaining agreement is effectively undermined.

In *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), an employee covered by a collective bargaining agreement brought a civil action against his employer for severance pay, without pursuing the grievance procedures. In finding that the employee was barred from suing his employer without first exhausting his contract remedies, the Supreme Court stated:

A contrary rule which would permit an individual employee to completely side step available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters, etc. v. Lucas-Flour Co.*, 369 U.S. 95, 103 [82 S.Ct. 571, 577, 7 L.Ed.2d 593] * * *.

*Id.* at 653, 85 S.Ct. at 616. Requiring union members to exhaust their contract remedies is part of the trade-off such employees accept in exchange for the many rights that they benefit from-rights not enjoyed by the employee at will.

Schuyler agrees that if this were a common law action for wrongful discharge, he would be required to pursue the remedies and procedures provided by the collective bargaining agreement. He emphasizes, however, that he does not seek to recover under his employment contract, but seeks recovery under a separate statutory cause of action, specifically Minn.Stat. § 176.82. *Cf. Davis v. Boise Cascade Corp.*, 288 N.W.2d 680 (Minn.1979) (court held that union employee must exhaust the grievance procedures before bringing an action for wrongful discharge and rejected employee's argument that Minn.Stat. § 182.-669 (1978) provides an independent cause of

action). Some jurisdictions with statutes similar to Minn.Stat. § 176.82 have required exhaustion of grievance procedures provided by a collective bargaining agreement, while others have not. *See, e.g., McKiness v. Western Union Telegraph Co.*, 667 S.W.2d 738 (Mo.App.1984) (employee's claim of retaliatory discharge under Mo.Rev.Stat. § 287.780 (1978) fell within the subject matter of her collective bargaining agreement and her action was therefore premature because she failed to exhaust the remedies provided in that agreement); *Puchert v. Agsalud*, 677 P.2d 449 (Hawaii 1984) (employee's statutory claim under Hawaii Rev.Stat. § 378–32 for unlawful discharge was not preempted by collective bargaining agreement or federal labor laws).

█ On its face, section 176.82 provides that an employer is liable in a civil action for damages if he discharges or threatens to discharge an employee for seeking workers' compensation benefits or if he in any manner intentionally obstructs an employee seeking workers' compensation benefits. This language seems to provide an aggrieved employee with an independent cause of action. In this case, however, Schuyler is essentially claiming that his discharge was not just or merited and that MTC therefore violated the collective bargaining agreement. MTC discharged Schuyler on the grounds of absenteeism, which Schuyler alleges was caused by a work-related compensable injury. MTC claims that the discharge was justified, because its physician had declared Schuyler able to work. This grievance is not critically unlike other types of grievances involving MTC policies. Resolution of Schuyler's claim would involve MTC's interpretation of the collective bargaining agreement and would affect future relations between MTC and other employees. Because Schuyler's claim falls within the subject matter of the collective bargaining agreement, we find he was required to exhaust the grievance procedures before bringing this suit.

This court recognizes the strong policies of protection embodied in the Workers' Compensation Act and agrees that such policies may possibly be frustrated if employees are discharged because of absence due to work-related injuries. In this case, however, we find the policies favoring exhaustion of grievance procedures and resort to less-intrusive arbitration procedures more compelling. Schuyler would not have been prejudiced had he first attempted to exhaust his contract remedies. Indeed, he probably would have saved time and money by arbitrating his dispute first.

█ Employees subject to a collective bargaining agreement alleging retaliatory discharge under section 176.82 should only be allowed to pursue a civil action for statutory damages, including punitive damages, after following the appropriate grievance procedures and the arbitrator has made a finding of retaliatory motivation. If the arbitrator finds that the employee has been discharged for just cause, the employee should be precluded from pursuing a civil action, absent the existence of extraordinary circumstances such as collusion between the union and the employer. *See Vaca*, 386 U.S. at 185, 87 S.Ct. at 914.

█ Schuyler asserts that any attempt to proceed under the grievance procedures would have been futile because MTC and the union conspired to deprive him of his rights and because when he did approach the union with his claim, they were "disinclined to help him." However, bare allegations of collusion, without alleging facts to support such a conclusion, are not sufficient to transform an otherwise barred claim into an allowable civil action. Moreover, Schuyler was not entitled to ignore the procedures provided by the collective bargaining agreement simply because he believed that he would not be successful. *Davis*, 288 N.W.2d at 683–84. While the union may have been "disinclined to help him," he was the one who decided to pursue the matter no further. Schuyler has made no showing which would excuse his failure to invoke the grievance procedures.

Because we find that Schuyler's failure to exhaust the grievance procedures pre-

cludes this action, we need not discuss the parties' remaining arguments.

## DECISION

Appellant was required to exhaust the grievance and arbitration procedures provided in his collective bargaining agreement before bringing suit against his employer under Minn.Stat. § 176.82.

Affirmed.