Patrick G. TAUBMAN, Appellant,

v.

PROSPECT DRILLING & SAWING, INC., Respondent.

No. C6–90–2448.

Court of Appeals of Minnesota.

April 30, 1991.

Review Granted July 24, 1991.

Charles W. Faulkner, Brian C. Southwell, Faulkner & Faulkner, Minneapolis, for appellant.

William D. Hull, Timothy R. Duncan, Van Vliet & Hull, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., LANSING and CRIPPEN, JJ.

## OPINION

DAVIES, Judge.

Patrick G. Taubman commenced this action against Prospect Drilling & Sawing, Inc., claiming he was demoted and discharged in retaliation for filing a workers' compensation claim in violation of Minn. Stat. § 176.82. The trial court granted summary judgment to Prospect, finding Taubman's claim barred by his failure to exhaust contractual grievance and arbitration procedures before bringing suit. The trial court also denied Taubman's motion to amend his complaint to add claims for breach of contract, promissory estoppel, and fraud. We affirm.

## FACTS

On March 5, 1987, Taubman began working for Prospect as a laborer. Prospect is a company engaged in the business of cutting, removing, and patching concrete. The terms of Taubman's employment were governed by a collective bargaining agreement. Before coming to Prospect, Taubman had previously been employed as a saw cutter with another concrete cutting company. According to Taubman, he changed jobs and began working for Prospect after being promised he would be moved "into sales and estimating." He stated a manager at Prospect told him the following:

When I started working at Prospect, Tom had said to me at that point in time, "Pat, it is going to take a short period of time before we can get this sales position in line for you. If you can bear with us and hang out in the field for a short period of time, we will get you into that sales position shortly." I said, "Fine, Tom, as long as I know I am going to be moving into a sales and estimating type position I will make the move over from Concrete Sawing."

He also stated the manager told him the following after he had been working at Prospect for some period of time:

Then I talked to Tom at that point in time and Tom assured me of the fact that, "Pat, just hang in there a little bit. We are going to get you into that sales position yet." He knew that is what I wanted to be in.

On April 28, 1987, Taubman injured his thumb and was out of work until June 4, 1987. During that period of time, he received temporary total disability payments from Prospect's workers' compensation insurance carrier. He then returned to work and remained there until December 30, 1987, at which time he was laid off due to lack of available work. Taubman never returned to work for Prospect.

In October 1989, Taubman commenced this action against Prospect, claiming he was demoted and discharged in violation of Minn.Stat. § 176.82 in retaliation for filing a workers' compensation claim. In June 1990, Prospect brought a motion to amend its answer to assert the affirmative defense of failure to exhaust the grievance and arbitration procedures provided in the collective bargaining agreement before bringing suit, and also for summary judgment. In response, Taubman made a motion to amend his complaint to assert claims for breach of contract, promissory estoppel, and fraud. On July 10, 1990, the trial court issued an order granting Prospect's motion to amend its answer, denying Taubman's motion to amend his complaint, and granting summary judgment in favor of Prospect. Taubman then filed a notice of appeal to this court, seeking review of

the July 10 order for summary judgment. That appeal was dismissed by order of this court on September 6, 1990, as having been improperly taken from the order instead of judgment. A proper appeal was then taken from the judgment.

## ISSUES

1. Did the trial court abuse its discretion in allowing Prospect to amend its answer?

2. Was Taubman required to exhaust the grievance procedures provided by the collective bargaining agreement before bringing an action under Minn.Stat. § 176.82 for retaliatory discharge?

3. Did the trial court abuse its discretion in denying Taubman's motion to amend his complaint?

## ANALYSIS

The function of this court on appeal from summary judgment is "only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

■ 1. Taubman indicates in his brief that the first issue on appeal is whether the trial court abused its discretion in allowing Prospect to amend its answer to assert as an affirmative defense Taubman's failure to exhaust grievance procedures before filing suit. This issue, however, is advanced without discussion or citation to authorities, and, therefore, is deemed waived on appeal. *See* Minn.R.Civ.App.P. 128.02, subd. (1)(d); *see also Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971).

■ 2. The amendment having been allowed, Taubman argues the trial court erred in ruling that he was required to exhaust the grievance procedures provided in the collective bargaining agreement before bringing an action under Minn.Stat. § 176.82 (1986) for wrongful discharge. Taubman argues the trial court, in reaching this conclusion, erroneously relied on this court's decision in *Schuyler v. Metro-*

*politan Transit Comm'n,* 374 N.W.2d 453 (Minn.App.1985), because *Schuyler* was overruled by the United States Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). We disagree.

The Supreme Court in *Lingle* dealt with when state law is applicable to a workplace decision where there is a collective-bargaining agreement. The Court said in a relatiatory discharge, the questions are purely factual and do not "require[ ] a court to interpret any term of a collective-bargaining agreement. * * * Thus, the state-law remedy * * * is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 310 preemption purposes." *Id.* at 407, 108 S.Ct. at 1882. This is the situation at issue here. Thus, Minnesota law governs.

Minnesota has adopted the Uniform Arbitration Act and Minn.Stat. § 572.08 (1986) provides that:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. * * * Sections 572.08 to 572.30 also apply to arbitration agreements between employers and employees * * * unless otherwise provided in the agreement.

We conclude the trial court correctly determined that Taubman's claim was barred by his failure, before bringing suit, to exhaust the grievance procedures mandated by contract. *See Schuyler,* 374 N.W.2d at 456.

■ 3. Taubman also argues the trial court abused its discretion in denying his motion to amend his complaint to add claims for breach of oral contract, promissory estoppel, and fraud, all based on Prospect's alleged offer of a non-union sales and/or management position. We disagree. The decision of the trial court to allow or disallow a motion to amend the pleadings will not be reversed except for clear abuse of discretion. *LaSalle Cartage Co. v. Johnson Bros. Wholesale Liquor Co.,* 302 Minn. 351, 357–58, 225 N.W.2d 233, 238 (1974). A denial of a motion to amend is proper when the movant fails to present evidence to support the claims the movant seeks to assert. *Davis v. Midwest Discount Sec., Inc.,* 439 N.W.2d 383, 388 (Minn.App.1989). A court may consider the stage of the proceedings in deciding whether to allow an amendment. *Id.*

■ Here, the trial court denied Taubman's motion to amend his complaint to add a claim for breach of oral contract because it concluded that any offer or promise made to him by Prospect was only for at-will employment. As an at-will employee he could be terminated at any time; therefore, there was no basis on which to claim damages. *See generally Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626–27 (Minn.1983) (if offer and acceptance, there may be unilateral contract; when hiring is for indefinite term, it is "at will"); *Rognlien v. Carter,* 443 N.W.2d 217, 219–20 (Minn.App.1989) (promise of employment enforceable if requirements met for unilateral contract; absent sufficient facts, employment is presumed to be at-will), *pet. for rev. denied* (Minn. Sept. 21, 1989). We agree with this analysis and conclude the trial court did not err in denying Taubman's motion to add a claim for breach of oral contract.

■ We also conclude the trial court did not err in denying Taubman's motion to add claims for promissory estoppel and fraud. Since there was no promise of permanent employment, the claim for promissory estoppel necessarily fails. *See Harris v. Mardan Business Sys.,* 421 N.W.2d 350, 354 (Minn.App.1988), *pet. for rev. denied* (Minn. May 18, 1988). The fraud claim fails because there is no evidence the offer of employment made by Prospect to Taubman was made in bad faith or without the intent of carrying it out. *See Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687, 690 (Minn.App.1987) ("When a promise is made in good faith with the expectation of carrying it out, the fact that it is subsequently broken does not give rise to a cause of action for fraud."), *pet. for rev. denied* (Minn. Jan. 28, 1988).

## DECISION

The trial court properly granted Prospect's motion for summary judgment and denied Taubman's motion to amend his complaint. Taubman's objection to the amendment of the answer is deemed waived due to his failure to argue it on appeal.

Affirmed.

CRIPPEN, Judge (dissenting).

Under Minnesota statutory law, if an employer discharges an employee for seeking workers' compensation benefits the employee is entitled to recover damages in a civil action. Minn.Stat. § 176.82 (1990). As the majority reports, this court once conditioned this employee remedy on prior exhaustion of grievance procedures and other labor law remedies under a collective bargaining agreement. *Schuyler v. Metropolitan Transit Comm'n*, 374 N.W.2d 453, 457 (Minn.App.1985). It is incumbent upon us to reconsider and recast the law of *Schuyler* as a result of the decision of the United States Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

1. Initially, the court should recognize that there is logical disharmony between the rationale in *Schuyler* and the subsequent reasoning of the United States Supreme Court in *Lingle*. In *Schuyler*, the employee claimed his absenteeism was caused by a work-related compensable injury. Because the employer's medical doctor reported Schuyler was able to work, the employer claimed absenteeism of Schuyler was inexcusable and his discharge justified. We concluded that Schuyler was "essentially claiming" that his discharge was not "just or merited" and that [the employer] therefore violated the collective bargaining agreement. *Schuyler*, 374 N.W.2d at 456. We added:

> This grievance is not critically unlike other types of grievances involving [the employer's] policies. Resolution of Schuyler's claim would involve [the employer's] interpretation of the collective bargaining agreement and would affect future

relations between [the employer] and other employees.

*Id.*

Similarly, employee Lingle brought an Illinois state court proceeding alleging that she had been discharged for exercising her rights under Illinois workers' compensation laws. After removal, the federal district court found cause to dismiss the complaint because the claim was "inextricably intertwined" with a collective bargaining provision prohibiting discharge without just cause. *Lingle*, 486 U.S. at 401, 108 S.Ct. at 1879 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 618 F.Supp. 1448, 1449 (S.D. Ill.1985)). Thus, the lower courts concluded that pursuit of the state law action was preempted by the scheme of federal law related to enforcement of collective bargaining agreements. *See Lingle*, 618 F.Supp. at 1449–50, *aff'd*, 823 F.2d 1031, 1046 (7th Cir.1987) (en banc).

In its *Lingle* decision, the Supreme Court reviewed the ingredients of an Illinois retaliatory discharge claim. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882. The court then reversed the lower courts, concluding that adjudication of the state claim "does not depend upon the interpretation of [collective bargaining] agreements." *Id.* at 409, 108 S.Ct. at 1883. The court explained:

> Each of these purely factual questions [in a retaliatory discharge claim] pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge * * *; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement.

*Id.* at 407, 108 S.Ct. at 1882 (citations omitted). Thus, employing a rationale completely at odds with our analysis in *Schuyler*, the Supreme Court determined that the state law claim could be pursued independently of the federal scheme of law on collective bargaining agreements.

2. The effect of *Lingle* goes beyond its weight as a scheme of analysis for a substantially identical issue. State law on exhaustion of remedies, the subject of *Schuyler*, is completely interdependent with federal preemption law. Both doctrines, of course, require pursuit of collective bargaining agreement remedies prior to a retaliatory discharge claim. The relationship between the doctrines, however, is even deeper.

State principles on the exhaustion of collective bargaining agreement remedies are premised on the existence of preemptive federal law labor agreement remedies. So, for example, *Schuyler* observed that the Supreme Court of Hawaii rejected exhaustion of remedies in an unlawful discharge case because of its conclusion that the claim was not preempted by federal labor law. *Schuyler*, 374 N.W.2d at 456, (discussing *Puchert v. Agsalud*, 67 Haw. 25, 677 P.2d 449 (1984), *appeal dismissed*, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985)). Similarly, Maryland state law, paralleling *Schuyler*, is viewed as complementary to federal preemption principles. *Childers v. Chesapeake & Potomac Telephone Co.*, 881 F.2d 1259, 1264 (4th Cir. 1989). Thus, although the majority in *Childers* followed pre-*Lingle* Maryland law on exhaustion of remedies, *id.* at 1265, a dissenting judge observed that because of *Lingle* the Maryland exhaustion of remedies doctrine reflects an erroneous perception of post-*Lingle* federal law. *Id.* at 1272 (Phillips, J., dissenting).

In addition, our effort to uphold the exhaustion of remedies principle of *Schuyler* is simply incompatible with federal preemption law viewing a state law claim of retaliatory discharge as beyond the parameters of federal labor law. Grievance and arbitration proceedings are a distinctive part of federal labor law on enforcement of collective bargaining agreements. Depending upon the outcome in grievance and arbitration, a decision under the collective bargaining agreement may be followed by a federal law court proceeding under section 301(a) of the Labor Management Relations Act, 1947. 29 U.S.C. § 185(a) (1988). Under *Lingle*, none of these federal proceedings provide an appropriate forum to deal with a claim under state statute for damages resulting from a discharge in retaliation for pursuit of workers' compensation benefits.

3. The *Lingle* court acknowledged "[i]t is conceivable" that a state could create a nonnegotiable statutory remedy that nonetheless hinges its application on the interpretation of a collective bargaining agreement. *Lingle*, 486 U.S. at 407 n. 7, 108 S.Ct. at 1882 n. 7. Premised on this footnote, respondent contends that under *Schuyler*, Minnesota law requires contract interpretation in order to apply Minn.Stat. § 176.82. Similarly, the majority dismisses *Lingle* on the notion that *Schuyler* is an established part of Minnesota's substantive law on claims of retaliatory discharge. These arguments offend the legislative declaration in section 176.82 and they misconstrue the meaning and importance of *Schuyler*. On its face, the statute creates a nonnegotiable remedy in the event an employee is discharged for seeking workers' compensation benefits. Nothing must be determined under the contract to decide whether such a discharge has occurred. The *Schuyler* court reasoned, before *Lingle* was decided, that the statute and the contract dealt with a common topic of discharge. The court did not, however, pretend to alter the statutory remedy so that its application depended in any fashion upon identifying or interpreting the language employed by the parties in their contract.

4. Finally, respondent asserts that the employee's claim here is unlike the claim considered in *Lingle* and requires interpretation of the collective bargaining agreement as a matter of fact; respondent argues that elements of the claim are "inextricably intertwined" with discharge language employed in the agreement. The trial court evidently agreed with this contention, concluding that appellant's claim actually required interpretation of contract provisions. To the contrary, just as in *Lingle*, appellant's claim can be determined singularly by examining whether or not his

discharge was in retaliation for an attempt to recover compensation benefits.

The *Lingle* plaintiff worked under a contract that prohibited discharge except for "proper" or "just" cause. Similarly, appellant worked under a contract prohibiting discharge except for unsatisfactory work or behavior, or reduction in the number of needed employees. No doubt, the *Lingle* plaintiff's claim of retaliatory discharge involved determinations that would reflect upon what was proper or just. Likewise, appellant's claims may reflect upon whether his discharge was beyond the scope of those permitted under the contract. In either case, under the rationale of *Lingle*, the retaliation claim is a subject discernible without a contract interpretation. As in *Lingle*, the state law claim here can be resolved by determining whether there is evidence the employer actually entertained the motive to retaliate. This state law determination should occur, the *Lingle* court reasoned, even if the state law claim requires the same factual analysis that would occur in applying the collective bargaining contract. *Lingle*, 486 U.S. at 408, 108 S.Ct. at 1883.

I respectfully dissent.