**ADMIRAL MERCHANTS MOTOR FREIGHT, INC., et al.,
Appellants,**

v.

**O'CONNOR & HANNAN, Kirkland
& Ellis, Respondents.**

No. C1–92–76.

Supreme Court of Minnesota.

Dec. 31, 1992.

Rehearing Denied Feb. 11, 1993.

262

John D. Levine, Peter M. Lancaster, Dorsey & Whitney, Minneapolis, for appellants.

James S. Simonson, John M. Nichols, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondent O'Connor & Hannan.

John D. French, Elizabeth L. Taylor, Faegre & Benson, Minneapolis, for respondent Kirkland & Ellis.

KEITH, Chief Justice.

This appeal arises directly from a summary judgment granted by the Hennepin County District Court to defendant law firms, O'Connor & Hannan (O & H) and Kirkland & Ellis (K & E), in a legal malpractice action brought by Admiral Merchants Motor Freight, Inc. (Admiral Merchants) and Leamington Co. (Leamington).

We believe there are material facts in dispute as to whether or not O & H's and/or K & E's failure to request arbitration in Admiral Merchants' pension dispute with the Teamsters Central States, Southeast and Southwest Area Pension Fund (Central States Fund), was legal malpractice, and therefore we remand this issue for trial. We affirm the trial court's denial of Admiral Merchants' and Leamington's motion to amend the complaint against K & E to add punitive and treble damages.

Admiral Merchants Motor Freight, Inc. and Leamington Co. were Minnesota corporations owned and operated by Robert E. Short until his death on November 20, 1982. Mr. Short's son, Brian, took over responsibility for these family businesses and others owned by his father after his death.[1] O & H represented Admiral Merchants and other Short entities for over ten years, until it withdrew as counsel on May 29, 1987. K & E was retained by Admiral Merchants in October 1985.

The dispute arises over Admiral Merchants' and Leamington's liability for certain unpaid pension funds. Under a collective bargaining agreement with the International Brotherhood of Teamsters, Admi-

---

1. Admiral Merchants Motor Freight, Inc. and Leamington Co. are two of 23 companies or corporations within an organizational structure of R.E. Short.

ral Merchants was responsible for making contributions on behalf of its employees to the Central States Fund. Because of a labor dispute in the summer of 1980, Admiral Merchants had ceased contributing to the Central States Fund. In January 1984, the Central States Fund sent a first demand letter to Admiral Merchants, c/o O & H, assessing Admiral Merchants more than $5.3 million, which represented a withdrawal assessment owing to the Central States Fund. Under the applicable provisions of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1405 (1988), Admiral Merchants had the right to request an administrative review of this assessment and, then, by demanding arbitration, to resolve any continuing dispute. Admiral Merchants' option to dispute the plan's assessment is a statutory right which is lost if Admiral Merchants fails to request arbitration in a timely manner. O & H represented Admiral Merchants concerning this matter until at least October 1985, when K & E was retained. O & H had previously represented Admiral Merchants in a similar case arising out of a withdrawal liability assessment from another pension plan.

In November 1983, O & H investigated the issue of possible liability of Admiral Merchants and other R.E. Short control group employers (Control Group) and individual shareholders of these corporations for any unfunded liability to the Central States Fund. A copy of O & H's internal memorandum was sent to Brian Short, who responded by letter about his concerns regarding Control Group liability for these assessments.

On May 4, 1984, the Central States Fund notified O & H that the withdrawal liability was affirmed. O & H requested that the Board of Trustees of the Central States Fund reconsider the prior request for review of determination of withdrawal liability. Discussions and negotiations continued over the ensuing months, and O & H was under the impression that the request for reconsideration was under advisement. On October 3, 1985, the Fund sent the second and final demand letter to O & H, this time demanding $5.26 million. On October 11,

1985, the Central States Fund filed a complaint against Admiral Merchants in the federal court of the Northern District of Illinois, Eastern Division, for the withdrawal assessment.

Admiral Merchants retained the firm of K & E to defend this suit based on their expertise in this field of law and their law offices in Illinois. K & E prepared an answer to the complaint, claiming that Admiral Merchants had withdrawn from the Fund prior to September 26, 1980, the effective date of MPPAA, that the court lacked jurisdiction, and that Admiral Merchants owed nothing. No arbitration was requested. In January 1986, the Central States Fund filed a motion to amend its complaint, asking for a default judgment because Admiral Merchants failed to initiate arbitration within 60 days of the October 3, 1985, letter from the Central States Fund reaffirming the assessment. Based upon a magistrate's report, the district court granted summary judgment to the Central States Fund and entered a default judgment against Admiral Merchants on March 27, 1987, in the amount of $8.2 million. On appeal, the decision of the district court was affirmed. *Robbins v. Admiral Merchants*, 846 F.2d 1054 (7th Cir.1988). In November 1988, after Central States Fund sued the Control Group to enforce the lower court judgment, a settlement agreement was reached, whereby the Control Group agreed to pay approximately $5.75 million to the Central States Fund.

In May 1989, Admiral Merchants and Leamington commenced this lawsuit against O & H and K & E for malpractice, alleging that both defendants failed to take steps to preserve Admiral Merchants' ability to arbitrate the dispute over withdrawal liability to the Fund. Admiral Merchants asserted that failure to request arbitration caused a forfeiture of defenses that would have been available to Admiral Merchants and that this failure resulted in the entry of default judgment. After lengthy discovery, Admiral Merchants and Leamington filed a motion to amend the complaint, asserting punitive damages and treble damages against K & E for knowingly with-

holding information and misleading Admiral Merchants about the defenses available to the corporation. The court found that Admiral Merchants did not present evidence sufficient to show a prima facie case for punitive and treble damages and therefore denied the motion.

All parties then presented motions for summary judgment. In an order dated October 15, 1991, the district court granted the motions of both O & H and K & E to dismiss the complaint, holding that: (1) Leamington failed to show the existence of an attorney-client relationship with either O & H or K & E; (2) Admiral Merchants and Leamington failed to show negligence of K & E but jury issues remained regarding alleged negligence of O & H; (3) Admiral Merchants and Leamington failed to show proximate cause for any damages on any claims, specifically for any damages sustained by Admiral Merchants; and (4) Admiral Merchants and Leamington failed to show that but for the alleged negligence of defendant law firms, the plaintiffs would have prevailed in the underlying dispute.

In Minnesota, a motion for summary judgment shall be granted only if there is no issue of material fact and a party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The moving party must show that there are no genuine issues as to any material fact. *Sauter v. Sauter,* 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955). The evidence must be viewed in the light most favorable to the non-moving party. *Id.* at 484–85, 70 N.W.2d at 353; *see also Minnesota v. Hennepin County,* 441 N.W.2d 106, 109 (Minn.1989). The party opposing the motion must oppose with depositions or affidavits with facts sufficient to raise a jury issue. *Lundgren v. Eustermann,* 370 N.W.2d 877, 881 (Minn.1985). Any doubt as to the existence of a material fact must be resolved in finding that the fact issue exists. *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974).

█ In this case, Admiral Merchants and Leamington must factually establish: (1) that an attorney/client relationship existed between Leamington and O & H and K &

E, (2) that respondent's acts constituted negligence or breach of contract, (3) that such acts were the proximate cause of Admiral Merchants' and Leamington's damages, and (4) that but for the O & H and K & E conduct, Admiral Merchants would have been successful in the prosecution or defense of the action. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn.1980).

## I.

█ Whether an attorney-client relationship exists is usually a question of fact dependent upon the communications and circumstances. *See Ronnigen v. Hertogs,* 294 Minn. 7, 9–10, 199 N.W.2d 420, 421–22 (1972); *Christy v. Saliterman,* 288 Minn. 144, 151, 179 N.W.2d 288, 294 (1970). There is no dispute that O & H and K & E represented Admiral Merchants. The parties also agree that there was no written contract between Leamington and O & H or K & E. The critical fact issue is whether Leamington produced sufficient evidence to present a jury issue that this corporation did have an attorney-client relationship with these two law firms. The question of whether an attorney-client relationship exists can be determined by evidence of an implied contract or by the use of a tort or third-party beneficiary analysis.

Leamington, in attempting to establish an implied contract, produced evidence that both law firms were aware of the fact that the other Control Group entities besides Admiral Merchants could be liable for the withdrawal liability assessment. Leamington also produced evidence that O & H and K & E knew that Admiral Merchants did not have sufficient assets to pay a judgment in excess of $5 million and that this liability of the Control Group was a major concern to Brian Short. Both law firms received payment of fees from Admiral Merchants, Leamington, and other control group entities.

█ There were also facts presented that under a tort theory, an attorney-client relationship may have been established between Leamington and O & H and K & E. Under this theory, an attorney-client rela-

tionship is created whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice. *Togstad*, 291 N.W.2d at 692–93. Both law firms rendered advice concerning Control Group liability directly to Brian Short, Vice President of Leamington, and other members of the Control Group. It is a fact issue as to whether this advice could be relied upon to establish an attorney-client relationship with Leamington.

■ Finally, an intended third-party beneficiary may bring an action for legal malpractice in those situations when the client's sole purpose is to benefit the third party directly, and the attorney's negligent act caused the beneficiary to suffer a loss. *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn.1981). In these limited situations, the determination is a matter of balancing the extent to which the transaction was intended to affect Leamington, the foreseeability of harm to Leamington, the degree of certainty that Leamington suffered injury, the closeness of the connection between the law firm's conduct and the injury, and the policy of preventing future harm. *Id.* (*citing Lucas v. Hamm*, 56 Cal.2d 583, 588, 364 P.2d 685, 687, 15 Cal.Rptr. 821, 823 (1961)).

■ Admiral Merchants and Leamington have presented evidence, which, if believed, would show that the Control Group was the intended beneficiary when Admiral Merchants retained legal counsel to defend against the withdrawal liability assessment, because Admiral Merchants itself was nearly judgment-proof. The fact finder might conclude that withdrawal liability was a foreseeable harm to Leamington and directly related to the failure of O & H and/or K & E to request arbitration.

Therefore, we conclude there are genuine issues of material fact in dispute and that the question of whether an attorney-client relationship existed with Leamington under any or all of these theories should be determined by the fact finder.

## II.

The heart of this case is the allegation of negligence on the part of both O & H and K & E for their failure to request arbitration timely and, as against K & E, for its handling of the *Robbins* litigation. Central States Fund obtained a default judgment against Admiral Merchants because of its failure to go to arbitration.

The trial court found that the period to request arbitration expired not later than July 1984, and, therefore, only O & H could be held negligent because K & E was not retained until October 21, 1985. A review of the record demonstrates, however, that evidence was presented indicating that arbitration was available to Admiral Merchants for 60 days following the October 3, 1985, final notice of assessment. In addition, Admiral Merchants and Leamington presented expert testimony that the alleged failure to request arbitration was negligent. Neither O & H or K & E refuted this testimony.

■ Expert testimony generally is required to establish a standard of care applicable to an attorney whose conduct is alleged to have been negligent, and further to establish whether the conduct deviated from that standard. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 252 N.W.2d 107, 116 (1977). When qualified expert opinion with adequate foundation is laid on an element of a claim, a genuine issue of material fact exists. *See State Farm Fire & Casualty Co. v. Wicka*, 474 N.W.2d 324, 333 (Minn. 1991). A trial court cannot substitute its own view of liability in favor of a defendant when plaintiff's expert testimony is credible and uncontroverted. Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.18 (3d ed. 1989).

■ If the fact finder found that the time limit for arbitration was still open at the time suit was filed against Admiral Merchants, and that the failure to request arbitration was negligent, the question remains: Who was negligent in failing to request arbitration? Generally, if a time limit has not run by the time a plaintiff consults a successor attorney, the predecessor attorney's negligence would not have

been the proximate cause of damage to plaintiff. *See Togstad,* 291 N.W.2d at 694. However, when there are genuine issues of material fact as to whether subsequent mishandling of a case by successor counsel was reasonably foreseeable to prior counsel, summary judgment is improper. *See id.* at 694–95.

 Admiral Merchants and Leamington have asserted sufficient facts that are in dispute on material issues relating to when the arbitration period ran and on whether O & H and/or K & E were negligent in not preserving Admiral Merchants' right to arbitrate.

Admiral Merchants and Leamington further allege that K & E negligently conducted the defense of the *Robbins* litigation by failing properly to pursue and conduct settlement negotiations, by misleading Admiral Merchants on provisions of the law, and by failing to use other defenses in the litigation. Attorneys are hired for their judgment and skill. Here, the claims involve a question of professional judgment and a choice of strategy by K & E. *See, e.g., Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). We agree with the trial court that there was not adequate evidence presented to defeat K & E's motion of summary judgment on this issue.

### III.

The next issue is whether Admiral Merchants and Leamington suffered damages as a result of either O & H or K & E's negligence in failing to request arbitration.

 The amount of actual loss sustained by a client in a malpractice action is normally considered an issue of fact for the jury. *Poplinski v. Gislason,* 397 N.W.2d 412, 415 (Minn.App.1986), *pet. for rev. denied* (Minn., Feb. 18, 1987). In Minnesota malpractice cases, attorney fees incurred in the underlying dispute constituting the alleged malpractice may be recovered. *Hill,* 252 N.W.2d at 121.

Admiral Merchants and Leamington submitted evidence that if Admiral Merchants had established in an arbitration proceeding that it withdrew from the Central States fund prior to September 26, 1980, no judgment would have been assessed. Clearly this defense was lost by the failure to arbitrate, and a lost defense, like a lost cause of action, may cause damages.

In addition, Admiral Merchants and Leamington presented evidence that even if arbitration had been unsuccessful, a large portion of their attorney fees paid after 1984 to O & H and K & E and other counsel would not have been paid had O & H requested arbitration prior to October 3, 1985, or had O & H and/or K & E requested arbitration in October or November of 1985. We believe that damages is an issue of fact for the jury.

### IV.

If one or both of the defendants were negligent, Admiral Merchants and Leamington must establish the value of what was lost because of this negligence. *See Hill,* 252 N.W.2d at 117. Admiral Merchants and Leamington must prove that, because the arbitration deadline was missed, the defenses were lost. Had arbitration been utilized, the arbitrator may have either affirmed the liability of assessment of $5.26 million, lowered the amount, or even found that there was no liability assessment. In any decision by the arbitrator, nearly $3 million in interest and penalties would not have been added to the withdrawal liability assessment. Both O & H and K & E argued the defenses against the withdrawal liability; they simply did not argue them in an arbitration proceeding. The jury should decide whether the assertion of such defenses would have made a difference.

### V.

 A final issue concerns the motion by Admiral Merchants and Leamington to amend the complaint against K & E to add claims for punitive and treble damages. The trial court denied this motion. A decision of the trial court on damages will not be reversed except for a clear abuse of discretion. *LaSalle Cartage Co. v. John-*

*son Bros. Wholesale Liquor Co.*, 302 Minn. 351, 225 N.W.2d 233, 238 (Minn.1974).

■■■ In a civil action, punitive damages are prohibited in the original complaint. Minn.Stat. § 549.191 (1990). After filing suit, a party may move to amend its pleadings to claim punitive damages and to provide the trial court, through affidavits, with a factual basis for the damages. *Id.* Punitive damages will be allowed only upon a showing by clear and convincing evidence that the acts of the defendant constitute a willful indifference to the rights and safety of others. Minn.Stat. § 549.20.[2] A mere showing of negligence is not sufficient; instead, the conduct must be done with malicious, willful, or reckless disregard for the rights of others. *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn.1980).

To receive treble damages, the claimant must prove that K & E intended to deceive the court or a party. Minn.Stat. §§ 481.07–.071 (1990). The trial court must find some credible evidence of an intent to deceive before submitting this issue to the jury.

■■■ The trial court noted that there was no direct evidence submitted by Admiral Merchants or Leamington of any fraud, deceit, bad faith, or maliciousness on the part of K & E. The court further found that the evidence submitted was insufficient to show a prima facie case for punitive or treble damages. We can find no abuse of discretion in the court's denial of this motion.

Affirmed in part, reversed in part, and remanded.

WAHL and SIMONETT, JJ., took no part in the consideration or decision of this case.

---

**2.** Minn.Stat. § 549.20 (1990) has been amended so that clear and convincing evidence must demonstrate that "defendant [acted with] deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20(1)(a) (1990).