TJD DISSOLUTION CORP., f/k/a Savoie Supply Co., Inc., Plaintiff,

v.

SAVOIE SUPPLY CO., INC., f/k/a J.J. Brooksbank Co., Inc., Defendant,

v.

Thomas A. SAVOIE, et al., Defendants on the Counterclaim.

David P. SAVOIE, Third–Party Plaintiff, Appellant,

v.

Robert B. WHITLOCK, et al., Third–Party Defendants, Respondents.

No. C0–90–534.

Court of Appeals of Minnesota.

Aug. 21, 1990.

David P. O'Connor, Kampmeyer & O'Connor, St. Paul, for appellant.

Michael Berens, Kelly & Berens, Minneapolis, for respondents.

Considered and decided by CRIPPEN, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

CRIPPEN, Judge.

Appellant David Savoie claims respondent Robert Whitlock negligently represented him in transactions for the sale of his interest in a corporation to the remaining owners and the ultimate sale of the corporation to another buyer. The trial court granted summary judgment, finding that as a matter of law no attorney-client relationship existed between the parties. We affirm.

## FACTS

Appellant and his two brothers owned Savoie Supply, Inc. Respondent became the corporation's attorney in the early 1970's, and served as secretary to the board of directors. In 1980, appellant became concerned that he was vulnerable to his brothers' dissipation of the corporation's assets; this and other concerns led him to decide to sell his share of the corporation to his brothers. During the buyout negotiations, Whitlock told appellant to retain his own attorney, but appellant de-

clined, stating, "I believe you can do a just job for all of us." Respondent drafted a buyout agreement and a document which subordinates appellant's claims against the corporation to the claim of Summit Bank. Appellant also asked respondent to protect him from dissipation of assets, and alleges respondent pointed out language in the agreement protecting him from such actions.

In 1983 and in 1984, the corporation experienced financial difficulty that appellant says was due to dissipation of its assets. Respondent drafted agreements of the brothers to modify the 1980 buyout; the new agreements called for appellant to give up twice as many shares for the originally negotiated price, and to reschedule the payments. Even after the modifications, the corporation failed to make payments on the note. Appellant claims respondent negligently advised him the sale transaction might collapse completely if not modified.

In 1985, appellant filed a complaint with the Lawyer's Board of Professional Responsibility, alleging respondent represented multiple parties in the earlier transactions. In September 1985, the Director issued a determination that discipline was not warranted, finding that respondent represented only the corporation and that his actions were consistent with that role.

In 1986, J.J. Brooksbank Co. purchased Savoie Supply. Brooksbank assumed the Savoie name and the Savoie brothers formed TJD Dissolution to receive the payments from Brooksbank.[1] Respondent drafted all the agreements in the transaction. Appellant claims respondent advised him to sign a "Consent and Agreement" releasing TJD Dissolution and his brothers from all liability to appellant. Appellant did not see the document prior to the date of the sale. He alleges Whitlock advised him that this document affected only the sale transaction, not any prior liability, and that he signed the document in reliance upon that advice. Contrary to these alleged statements, this document appears to cut off appellant's claims for payments due on the buyout agreement, not just claims arising from the sales transaction. Finally, appellant claims respondent negligently advised him to loan $61,000 to TJD, which has not been repaid.

The court granted respondent's motion for summary judgment. It found that respondent represented only the corporation, that appellant never requested respondent to represent him, and that respondent never sent him bills for services rendered in these transactions. It found that appellant had neither an express nor an implied contract of representation with respondent. It also found respondent replied to appellant's requests for advice "in a manner completely consistent with his representation of the corporation." Finally, noting the professional responsibility board's determination, it found,

> as a matter of law no reasonable person would be justified in relying on the advice given him by an attorney he knows was representing another party to the transaction. It would have been clear to any reasonable person that Whitlock was not representing him personally in any of these four transactions.

Appellant challenges the grant of summary judgment.

### ISSUE

Has appellant put forward sufficient material facts from which a jury could find the existence of an attorney-client relationship between appellant and respondent?

### ANALYSIS

■ Summary judgment is appropriate where the record shows there is no genuine issue regarding any material fact and it is clear the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. We must independently address the same standard. *See Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The materiality of the facts,

---

1. The action here is a third-party claim of appellant in litigation arising from this sale. Appellant claims respondent's negligent advice to sign the sales agreement caused him to become liable in the underlying action. There is no record of a disposition in that action.

as addressed most favorably to appellant, depends upon the particular legal theory under consideration.

■ To prove attorney malpractice, a plaintiff must establish three elements: (1) that an attorney-client relationship existed; (2) that the attorney acted negligently or in breach of contract; and (3) that the negligence or breach proximately caused damage to the plaintiff. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn.1980) (per curiam). This appeal concerns solely the first element.

■ Minnesota law recognizes two methods of establishing an attorney-client relationship: a contract theory and a tort theory. Under the contract theory, a plaintiff can show either an express or an implied contract of representation. *See Ronnigen v. Hertogs,* 294 Minn. 7, 11, 199 N.W.2d 420, 422 (1972). Here, appellant did not request respondent to represent him, respondent never promised to represent him, and respondent sent no bills to appellant for services rendered on his behalf. The trial court did not find appellant's statement to respondent in 1980 to be a request for representation, and we concur. Accordingly, there are no facts in the record from which the court could have found the existence of an attorney-client relationship under the contract theory.

The second theory is a tort theory. Under this theory,

> [a]n attorney-client relationship is created whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice.

*Togstad,* 291 N.W.2d at 693 n. 4 (quoting Comment, *Attorney Malpractice: Use of Contract Analysis to Determine the Existence of an Attorney–Client Relationship,* 63 Minn.L.Rev. 751, 759 (1979)); *see also Veit v. Anderson,* 428 N.W.2d 429, 431–32 (Minn.App.1988). The tort theory is based upon a recognition that the lawyer's duty to exercise reasonable care in giving advice arises from the position the lawyer

occupies, not from a contract. Comment, 63 Minn.L.Rev. at 758; *see also Colstad v. Levine,* 243 Minn. 279, 287–88, 67 N.W.2d 648, 654–55 (1954) (lawyer's duty toward the client is founded on the influence which the attorney's position creates).

Respondent gave legal advice to appellant and appellant relied on the advice to his detriment. However, to allow for a finding of the existence of a relationship, appellant's reliance must have been reasonable. Several factors support the court's ruling that appellant's reliance was unreasonable as a matter of law. First, as his concern for dissipation of corporate assets shows, appellant was aware that his relationship with the corporation was adversarial. He knew his interests differed from the interests of his brothers, who controlled the corporation. Second, appellant knew that Whitlock had represented the corporation for a number of years and owed allegiance to that client. Third, respondent advised him at least once, and possibly twice, to retain his own counsel. Finally, at the time of the 1986 sale, he had received the responsibility board's decision. Appellant's knowledge of the board's action bears on the question of the reasonableness of his reliance.[2]

■ The tort theory of attorney-client relationships protects lay persons where it would be reasonably foreseeable to the lawyer that the person might be injured if the advice is given negligently. *Togstad,* 291 N.W.2d at 693 n. 4. However, the theory has never been extended to apply to a situation where the lawyer represented a client known by the plaintiff to have interests adverse to the plaintiff, where the lawyer's allegiance to the adverse party was clearly evident, where the lawyer advised the plaintiff to retain his own counsel, and where the plaintiff had been advised by a neutral body that the lawyer did not represent him.

■ Lastly, appellant argues that respondent owed a duty of care to him as a non-client third party. In support of this

---

**2.** The board's action, which is based on the Rules of Professional Conduct, has no direct legal effect on this action. *See L & H Airco v.*

*Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn. 1989) (professional rules not intended for use in attorney malpractice cases).

contention, he cites cases from California, New York, Oregon and New Jersey. However, the current Minnesota rule is that an attorney is not liable to a non-client for negligent advice unless the attorney acted with malice or committed fraud or another intentional tort. *Eustis v. David Agency, Inc.,* 417 N.W.2d 295, 298 (Minn.App.1987) (citing *Farmer v. Crosby,* 43 Minn. 459, 461, 45 N.W. 866 (1890) *overruled on other grounds, Erickson v. Minnesota & Ontario Power Co.,* 134 Minn. 209, 215, 158 N.W. 979, 981 (1916)); *see also Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 30–31 (Minn.1982) (duty of lawyer depends on the existence of attorney-client relationship). Here, despite allegations that he was misled by respondent's advice, appellant concedes there is no evidence of fraud or malice.

The argument against the application of this theory to this case is strengthened by the fact that appellant's interests were adverse to the interests of respondent's client. *See L & H Airco,* 446 N.W.2d at 378–79 (lawyer owes no duty to client's adversary in litigation). We cannot impose a duty of divided loyalty upon a lawyer.

### DECISION

The trial court properly granted summary judgment on the ground no attorney-client relationship existed.

Affirmed.