Misty Jo GRAMLING, Appellant,

v.

MEMORIAL BLOOD CENTERS OF MINNESOTA, f/k/a The Minneapolis War Memorial Blood Bank, Inc., et al., Respondents.

No. C2–99–322.

Court of Appeals of Minnesota.

Oct. 22, 1999.

Review Denied Dec. 21, 1999.

Laura Whiteside, Richard E. Prebich, Abate, Wivoda, Clark, et al., Hibbing, MN (for appellant).

Alan L. Mitchell, St. Louis County Attorney, Amy Hunt Kuronen, Assistant County Attorney, Duluth, MN (for respondent St. Louis County).

Considered and decided by TOUSSAINT, Presiding Judge, PETERSON, Judge, and AMUNDSON, Judge.

## OPINION

AMUNDSON, Judge.

Alleging paternity tests conducted in 1979 erroneously excluded her father, appellant sued respondents St. Louis County, the doctor responsible for the tests, and the testing facility. After the claims against the doctor and the testing facility were resolved, the district court granted the county's summary judgment motion on appellant's remaining claim of legal malpractice by the county for its negligent failure to establish her paternity in 1979. On appeal, appellant argues the district court erred in granting the county summary judgment alleging she had an attorney-client relationship with the county. Because the county's statutory duty to conduct a paternity test is a prerequisite to its receipt of federal reimbursement, we conclude that an attorney-client relationship between the county and appellant was not created. We affirm.

## FACTS

In 1979, Julie Gramling, n.k.a. Julie Londo, gave birth to appellant Misty Jo Gramling. Londo applied for and received public assistance through the county. When the child was four months old, the county arranged for paternity testing. The paternity test results wrongfully excluded the alleged father, Joseph Jerulle, and this incorrect result was communicated to Londo and the county. Neither Londo nor the county further pursued the matter until 1996.

In 1996, the county again initiated paternity proceedings. Again, Londo, Gramling, and Jerulle provided blood samples. Paternity tests were performed indicating a 99.99% probability that Jerulle was Gramling's biological father. In 1998 Gramling sued the county, and further tests confirmed the 1996 test results.

## ISSUE

Did the district court properly grant the county's motion for summary judgment?

## ANALYSIS

On an appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v.*

*French,* 460 N.W.2d 2, 4 (Minn.1990). The reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted, *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn. 1993), but is not bound by nor need give deference to the district court's application of the law. *FrostBenco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ To sustain a legal malpractice action, the plaintiff must establish: (1) the existence of an attorney-client relationship; (2) that defendant breached the contract or acted negligently; (3) that the breach or negligence proximately caused plaintiff's damages; and (4) but for the attorney's conduct, the plaintiff would have been successful in the prosecution of the underlying claim. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn.1980).

The district court granted summary judgment finding that appellant Gramling failed to establish that an attorney-client relationship existed between Londo and the county. This analysis, however, does not address whether an attorney-client relationship existed between Gramling and the county.

■ In Minnesota, an attorney-client relationship can be established under either a contract theory or a tort theory. *TJD Dissolution Corp. v. Savoie Supply Co.,* 460 N.W.2d 59, 62 (Minn.App.1990). The existence of an attorney-client relationship is a factual determination. *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan,* 494 N.W.2d 261, 265 (Minn.1992). We will not set aside a district court's findings of fact unless clearly erroneous. Minn. R. Civ. P. 52.01.

## I. Contract Theory of Representation

■ Under the contract theory of representation, the parties to the alleged attorney-client relationship must have either explicitly or implicitly agreed to a contract for legal services. *Admiral Merchants,* 494 N.W.2d at 265. Here, Gramling alleges that an express contract of representation came into existence when Londo executed an assignment of support in order to obtain public assistance. In doing so, Londo assigned to the county her rights, as well as those of Gramling, to support from any other person (i.e., Gramling's father), in exchange for receiving public assistance. But,

> Minnesota is required to operate its AFDC program in conformity with federal law. Since 1975 federal law has required each AFDC applicant to sign an assignment of support clause as a condition of eligibility. Therefore, the assignment in this case arose by operation of law, rather than by execution of the assignment provision.

*Iverson v. Schulte,* 367 N.W.2d 570, 572 (Minn.App.1985). *See also Southwell v. Chamberland,* 361 N.W.2d 814, 818 (Minn. 1985) (finding that assignment of support arises by operation of law).

■ Gramling contends that *Iverson* and *Southwell* are distinguishable. In *Iverson,* the county sued the putative father on the mother's behalf; the issue was whether the assignment of support to the county was enforceable. *Iverson,* 367 N.W.2d at 572. The issue in *Southwell* was whether the county could receive back child support. *Southwell,* 361 N.W.2d at 818. While the facts of those cases differ from the case at hand, the proposition that an assignment of support does not create an express contract because the assignment arises by operation of law is applicable here.

■ Because the county was required by law to obtain the assignment as a prerequisite to its receipt of federal aid for its public assistance program, the county was simply fulfilling its statutory mandate. Thus, because the assignment agreement was statutorily mandated, it did not create an express contract establishing an attorney-client relationship between Londo, on behalf of Gramling, and the county.

The county contends that Londo never requested representation for herself and Gramling and that the county attorney never promised to represent her or Gramling. *See TJD*, 460 N.W.2d at 62 (attorney-client relationship was not created because the plaintiff did not request that the attorney represent him, and the attorney never promised to represent him). Here, the only contact the county had with Londo, on behalf of Gramling, concerned public assistance and this communication did nothing to create an implied contract between Londo, on behalf of Gramling, and the county concerning the establishment of an attorney-client relationship.

 Also, as a matter of law, a party's mere expectation that an attorney will represent him or her, is insufficient to create an attorney-client relationship. *Spannaus v. Larkin, Hoffman, Daly & Lindgren*, 368 N.W.2d 395, 398–99 (Minn.App.1985), *review denied* (Minn. Aug. 20, Sept. 25, 1985). Thus, the mere expectation by Londo and/or Gramling that the county would pursue and establish Gramling's paternity was insufficient to create an attorney-client relationship between Gramling and the county and we conclude that there was no attorney-client relationship under a contract theory of representation.

## II. Tort Theory of Representation

 An attorney-client relationship may also be established under a tort theory. Under the tort theory of representation,

> an attorney-client relationship is created whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice.

*TJD*, 460 N.W.2d at 62. An attorney's duty to exercise reasonable care in dispensing legal advice arises not from a contract, but from the position the attorney occupies. *Id.* Courts have focused on the contact that occurred between the plaintiff and the attorney. *See Admiral Merchants*, 494 N.W.2d at 266 (law firm ren-

dered legal advice directly to plaintiff's vice president); *Schuler v. Meschke*, 435 N.W.2d 156, 162 (Minn.App.1989) (tort theory rejected because plaintiffs did not seek advice and attorney had never represented any of the plaintiffs), *review denied* (Minn. Apr. 19, 1989). Here, the district court found that Londo did not seek legal advice from the county. Therefore, Londo could not have sought legal advice on behalf of Gramling. Absent a request for legal advice, we cannot conclude an attorney-client relationship existed under the tort theory of representation.

## III. Duty of the County per Statute

 Gramling contends that two statutes in effect in 1979 created an affirmative duty on the part of the county to establish her paternity. The two statutes read in pertinent part:

> It shall be the duty of the commissioner of public welfare to promote the enforcement of all laws for the protection of defective, illegitimate, dependent, neglected, and delinquent children, to cooperate to this end with juvenile courts and all reputable child-helping and child-placing of a public or private character, and to take the initiative in all matters involving the interests of such children where adequate provision therefor has not already been made.

Minn.Stat. § 257.175 (1978).

> It shall be the duty of the commissioner of public welfare when notified of a woman who is delivered of an illegitimate child, or pregnant with child likely to be illegitimate when born, to take care that the interests of the child are safeguarded, that appropriate steps are taken to establish his paternity, and that there is secured for him the nearest possible approximation to the care, support, and education that he would be entitled to if born of lawful marriage. For the better accomplishment of these purposes the commissioner of public welfare *may* initiate such legal or other action as is deemed necessary * * *.

Minn.Stat. § 257.33 (1978) (emphasis added).

Neither of these statutes requires the county to conclusively establish paternity. Indeed, under Minn.Stat. § 257.33, any legal action is permissive. *See* Minn.Stat. § 645.44, subd. 15 (1978) (" '[m]ay is permissive"). The county's duty under these statutes is to represent the state's interest in paternity actions, which "is to secure an adequate settlement and prevent the child from 'becom[ing] a public charge.' " *Benson v. Hackbarth*, 481 N.W.2d 375, 379 (Minn.App.1992), *review denied* (Minn. April 27, 1992) (quoting *Johnson v. Hunter*, 447 N.W.2d 871, 877 (Minn.1989)). Furthermore, even if the 1979 tests showed that Jerulle was Gramling's father, the permissive nature of the county's duties under Minn.Stat. § 257.33 allowed it the discretion not to proceed with a paternity action. *See* Minn.Stat. § 257.254 (1978) ("When requested to do so by a district court or county court judge, public welfare or other social service agency, the county attorney *may* appear on behalf of and represent the complainant in all proceedings under sections 257.251 to 257.259, 257.261 to 257.264 and 257.27 to 257.33 and shall obtain and present such evidence as may be necessary.") (emphasis added). We hold that the county was under no statutory duty to conclusively establish Gramling's paternity.

### DECISION

Because there was no contract-based or tort-based attorney-client relationship between the county and Gramling and because there was no statutorily created duty that the county conclusively establish Gramling's paternity, we affirm the district court's grant of summary judgment to the county on Gramling's claim of legal malpractice.

**Affirmed.**