*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0429**

Timothy Guzick, as Personal Representative of
the Estate of George J. Nyberg and as Trustee of
the George Nyberg Trust,
Appellant,

vs.

Larry Alan Kimball, et al.,
Respondents,

Colleen Bennett,
Defendant.

**Filed October 6, 2014
Reversed and remanded
Connolly, Judge
Dissenting, Johnson, Judge**

Cass County District Court
File No. 11-CV-13-689

Lori J. Beck, Steven R. Peloquin, Peloquin Beck, P.A., Perham, Minnesota; and

Michael T. Feichtinger, Cally R. Kjellberg-Nelson, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for appellants)

Nicholas Ostapenko, Roy J. Christensen, Michele Miller, Johnson, Killen & Seiler, P.A., Duluth, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the district court's grant of summary judgment dismissing his legal-malpractice claim for failure to comply with the expert-disclosure requirements of Minn. Stat. § 544.42 (2012). Because appellant submitted an affidavit and subsequent interrogatory answers sufficient to satisfy the statute, we reverse and remand.

## FACTS

In December 2008, Tony Nyberg contacted Colleen Bennett, who was an acquaintance of Tony and a legal secretary working at attorney Larry Alan Kimball's law firm. Tony was seeking assistance to become attorney-in-fact for his mother, Geraldine Nyberg, and his elderly uncle, George Nyberg. At that time, George was 94 years old and recovering from a recent fall that fractured his neck. Using a template on the law firm's computer, Bennett drafted power-of-attorney forms for Geraldine and George naming Tony as their attorney-in-fact. The default setting for the form template, which Bennett did not alter, authorized the attorney-in-fact to transfer to himself title of the principal's property. This is the broadest possible authorization a principal may provide the attorney-in-fact. Bennett placed the forms in a file she created at the law firm and provided Tony with copies of the forms. Using the law firm's paper calendar, Bennett scheduled a phone call for Kimball to discuss George's power-of-attorney form and also scheduled an in-home appointment to deliver and execute the forms.

On December 11, 2008, Kimball met with Geraldine, Tony, and Tony's wife at his office where they discussed Geraldine's estate planning. Geraldine mentioned that

2

George was also interested in executing a power-of-attorney form, but the meeting was focused primarily on Geraldine. At the end of that same day, Bennett took the forms from the office and met with Geraldine and George at Geraldine's home. George signed the power-of-attorney form created by Bennett, and Bennett notarized the form. Bennett did not ask George whether he understood the power-of-attorney form or whether it was tailored to meet his needs. Bennett was not sure whether the scheduled phone call regarding George's power-of-attorney form had occurred and did not recall asking Kimball about the forms before she left. Kimball did not recall reviewing George's power-of-attorney form, asking Bennett to draft the form, or talking to George at any point. Kimball Law Office generated a bill for George and Geraldine that same day. The bill was paid in July 2009.

Prior to and after George's death on January 7, 2009, Tony used the power of attorney to transfer $226,524.39 from George's bank accounts to his personal accounts. In December 2009, appellant Timothy Guzick, acting as personal representative of George's estate and trustee of George's trust, sued Tony for conversion of George's funds. The case was stayed when Tony filed for bankruptcy, but appellant was able to secure a nondischargeable judgment in the amount of $226,524.39 against Tony. In January 2012, appellant also sued Wells Fargo for breach of contract, breach of statutory duties, and negligence. Appellant's case against Wells Fargo was dismissed with prejudice in December 2012.

In February 2013, appellant initiated the current lawsuit against Kimball and Kimball Law Office, alleging legal malpractice for failing to advise George on the scope

3

of authorization provided by the power-of-attorney form. Appellant served an affidavit of expert review with the complaint, outlining an expert's opinion that Kimball's actions constituted legal malpractice. In May 2013, appellant amended the complaint to assert a claim of negligence against Bennett and to assert additional legal-malpractice claims against Bennett and Kimball and Undem (an alleged precursor to Kimball Law Office).

In September 2013, Kimball, Kimball Law Office, and Kimball and Undem (respondents) moved for summary judgment on the ground that appellant failed to comply with section 544.42, which requires certain pretrial expert-witness disclosures in a professional-malpractice case requiring expert testimony. In January 2014, the district court granted the motion. The district court reasoned that expert testimony is necessary to establish appellant's legal-malpractice claim, that appellant's expert disclosures were insufficient to comply with section 544.42, and that appellant was not entitled to cure deficiencies in his expert disclosures under the safe-harbor provision in section 544.42. This appeal follows.

## D E C I S I O N

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011).

## A.      Expert Testimony

We begin our analysis by quoting the late, great Tallulah Bankhead[1]: "There is less in this than meets the eye." *The Yale Book of Quotations* 43 (Fred R. Shapiro ed., 2006).  An attorney is asked to draft a power of attorney for his elderly client.  The document is drafted by a secretary.  The lawyer never meets the client.  Neither the lawyer nor the secretary ever discusses the ramifications of signing the document with the client.  The document allows the attorney-in-fact to transfer all of the client's assets to himself.  Days after the client signs the document, that is precisely what happens.

Appellant argues that the district court erred by concluding that expert testimony is required to establish all of the elements of a prima facie claim of legal malpractice.  We agree.

To establish a prima facie claim of legal malpractice "not involving damage to or loss of a cause of action," the plaintiff must prove each of the following four elements: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816, 819 (Minn. 2006).

In an action for legal malpractice in which expert testimony is required to establish any element of a prima facie case, section 544.42 requires a plaintiff to produce certain expert affidavits.  Minn. Stat. § 544.42, subd. 2; *see also Fontaine v. Steen*, 759 N.W.2d

---

[1] American stage and screen actress 1902-1968.

672, 676 (Minn. App. 2009). If a plaintiff fails to comply with these requirements, he risks the dismissal of his legal-malpractice claim, with prejudice. *Fontaine*, 759 N.W.2d at 676; *see also* Minn. Stat. § 544.42, subd. 6(a)-(c). Expert testimony generally is required to establish the second, third, and fourth elements of a legal-malpractice claim. *Id.* at 677. Only the "rare" or "exceptional" case is capable of resolution without expert testimony. *Id.* But expert testimony is not necessary if "the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony." *Hill v. Okay Constr. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977). "[W]hether expert testimony is required depends on the nature of the question to be decided by the trier of fact and on whether technical or specialized knowledge will assist the trier of fact." *Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 388 (Minn. App. 2001) (addressing expert testimony in medical-malpractice case), *review denied* (Minn. May 16, 2001); *see also* Minn. R. Evid. 702. This court reviews de novo whether expert testimony is necessary to establish a prima facie case of legal malpractice. *Fontaine*, 759 N.W.2d at 676.

The district court concluded that expert testimony is required to prove all four elements of appellant's malpractice claim. Appellant does not challenge the district court's conclusion with respect to the second element; appellant challenges only the district court's conclusion with respect to the first, third, and fourth elements. Accordingly, section 544.42 required appellant to make expert disclosures addressing, at a minimum, the second element of a prima facie case. Appellant's contention requires this court to determine whether expert testimony is also required to establish the first,

6

third, or fourth elements in this case and, as a result, whether appellant was also required to make expert disclosures concerning any of these other three elements.

### 1.    First Element: Attorney-Client Relationship

Appellant argues that expert testimony is not required to establish the existence of an attorney-client relationship.  We agree.

To prove the existence of an attorney-client relationship, a party may rely on either a contract theory or a tort theory.  *Gramling v. Mem'l Blood Ctrs. of Minn.*, 601 N.W.2d 457, 459 (Minn. App. 1999), *review denied* (Minn. Dec. 21, 1999).  Appellant relies on the contract theory.  Under the contract theory, "the parties to the alleged attorney-client relationship must have either explicitly or implicitly agreed to a contract for legal services."  *Id.*  In Minnesota, "[t]he existence of an attorney-client relationship is a factual determination."  *Id.*

The caselaw indicates that expert testimony generally is required to establish the standard of care and causation in a legal-malpractice case, but none of these cases indicate that expert testimony is also required to prove the existence of an attorney-client relationship.  *See, e.g.*, *Jerry's Enters.*, 711 N.W.2d at 817; *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 739 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010); *Fontaine*, 759 N.W.2d at 677.  Respondents do not cite any authority holding that expert testimony is required to prove the existence of an attorney-client relationship in a legal-malpractice case, and we are unaware of any such authority.  However, our analysis is informed by a case from the Sixth Circuit.  *See Innes v. Howell Corp.*, 76 F.3d 702 (6th Cir. 1996).  There, the Sixth

7

Circuit considered whether the district court erred by excluding expert testimony on the existence of an attorney-client relationship in a legal-malpractice case. *Id.* at 711. The Sixth Circuit reasoned that, based on the contractual nature of an attorney-client relationship,

> the existence of the relationship hinges upon the fact of mutual assent, either explicit or tacit, and not on the special ethical rules that govern in a unique negligence regime. The latter is a proper subject for expert opinion; the former is not. A jury does not need an expert to tell it whether there has been mutual assent for a contract. Indeed, it would truly be unfortunate if specialized legal knowledge were required for reasonable laypersons to ascertain whether they are actually being represented by counsel.

*Id.* at 712 (citation omitted). We conclude that expert-witness testimony generally is not essential to establish the existence of an attorney-client relationship in a legal-malpractice claim.

Moreover, expert testimony in this case would not assist a jury in understanding whether George and Kimball formed an attorney-client relationship. The facts of this case are relatively straightforward: Bennett prepared a power-of-attorney form for George, the form indicates it was prepared by "Kimball Law Office," George signed the form, and Kimball Law Office sent George a bill. Whether the two formed a contract for legal services does not require "technical or specialized knowledge." *See Fontaine*, 759 N.W.2d at 677; *see also* Minn. R. Evid. 702.

The district court erred by concluding that expert testimony is required to establish the existence of an attorney-client relationship in this case.

8

## 2.     Third and Fourth Elements: Causation

Appellant also argues that expert testimony is not required to prove causation. This is a more difficult question. We conclude that it is required to establish proximate causation but that it is not required for but-for causation.

The first step to resolving this question is to determine the precise causation issues that must be resolved in this case. In the context of legal malpractice, proximate cause is defined as:

> For negligence to be the proximate cause of an injury, it must appear that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting from it, even though he could not have anticipated the particular injury which did happen.

*Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 113 (Minn. 1992) (quotation omitted). But-for causation in a legal-malpractice claim, not involving a failed cause of action, requires proof that "but for defendant's conduct, the plaintiff would have obtained a more favorable result . . . than the result obtained." *Jerry's Enters.*, 711 N.W.2d at 819. Although expert testimony generally is required to prove causation in a legal-malpractice claim, *see, e.g.*, *Fontaine*, 759 N.W.2d at 677; *Schmitz*, 783 N.W.2d at 741, expert testimony is not required if "the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony," *Hill*, 312 Minn. at 337, 252 N.W.2d at 116.

As to proximate cause, the question in this case is whether the respondents had a duty to explain the ramifications of signing such an unlimited power-of-attorney form to George and whether failing to do so was the proximate cause of George's loss. The question seems to be whether the respondents should have anticipated that failing to

9

advise George about the breadth of the power-of-attorney form would result in the attorney-in-fact, Tony, using his authorization to convert funds in George's bank accounts. To address this question, "technical or specialized knowledge" would likely assist the trier of fact. *See Fontaine*, 759 N.W.2d at 677. For example, as appellant recognizes, an expert would provide helpful testimony about the legal effect of George signing the power-of-attorney form and the scope of authority it provided Tony. Additionally, expert testimony would be helpful to the trier of fact in fleshing out the foreseeability issue, namely, whether it is likely that an attorney-in-fact would use broad authorization to misappropriate a principal's property and, if so, whether attorneys should be aware that an attorney-in-fact would likely abuse such a broad grant of power. Thus, expert testimony is necessary to establish the element of proximate cause.

As to but-for causation, the question is whether, absent respondents' alleged negligence, a more favorable result would have been achieved during the representation (i.e., whether Tony would not have taken George's money). There are several sub-questions related to this issue. The first is whether, absent the respondents' alleged negligence, George would have refused to sign the power-of-attorney form or would have limited the form's authorization. Another question is whether some other person or entity was the but-for cause of George's injuries, such as Tony or Wells Fargo. The answers to these questions do not require any "technical or specialized knowledge." *See id.* For example, an expert cannot answer the question of whether George would have signed or limited the power-of-attorney form if respondents had provided him with more information. Nor would an expert be helpful in establishing whether Tony would have

10

found another way to misappropriate George's funds. And expert testimony is not necessary to establish whether Wells Fargo would have allowed Tony to obtain George's money without the power-of-attorney form or with a more limited power-of-attorney form. All of these questions may be answered with lay-witness testimony. This is not a typical legal-malpractice case in which the opinions of an expert witness would be crucial to establish difficult but-for-causation questions, such as whether a plaintiff would have been successful in an underlying lawsuit without the attorney's negligence. *See Jerry's Enters.*, 711 N.W.2d at 819 (describing usual but-for-causation element as requiring a party to show they "would have been successful in the prosecution or defense of the action"). Appellant does not need expert testimony to establish but-for causation.

In sum, expert testimony is required to establish the elements of negligence and proximate causation but is not required to establish the elements of attorney-client relationship and but-for causation.

**B.     Section 544.42**

Appellant next argues that the district court erred by concluding that he failed to file a sufficient affidavit of expert disclosure. He contends that his affidavit of expert review and answers to interrogatories satisfy the requirements of an affidavit of expert disclosure. We agree.

When a plaintiff pursuing a professional-malpractice claim needs expert testimony to establish a prima facie case, section 544.42 requires the plaintiff to file two affidavits: an affidavit of expert review and an affidavit of expert disclosure.

11

Minn. Stat. § 544.42 subds. 2-4. The first affidavit, the affidavit of expert review, should be "served with the complaint and requires the attorney to certify that the attorney has consulted with an expert with adequate qualifications and that the expert has reached the opinion that the defendant deviated from the applicable standard of care in a way that caused the plaintiff's injuries." *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 218 (Minn. 2007); *see also* Minn. Stat. § 544.42, subds. 2(1), 3. The second affidavit, the affidavit of expert disclosure, must be served within 180 days after the commencement of the action and provides a more detailed account of the expected expert testimony. *Brown-Wilbert*, 732 N.W.2d at 218; *see also* Minn. Stat 544.42, subds. 2(2), 4(a). Whether appellant complied with the requirements of the affidavit of expert disclosure is the central issue in this appeal.

> The affidavit of expert disclosure has specific requirements; it
>
> must be signed by the party's attorney and state the identity of each person whom the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

Minn. Stat. § 544.42 subd. 4(a). A plaintiff may also satisfy the requirements of expert disclosure through answers to interrogatories served within 180 days of commencing discovery. *Id.* Failure to comply with these requirements results in mandatory dismissal, with prejudice, of each claim requiring expert testimony. *Id.*, subd. 6(c).

12

Section 544.42 also contains a safe-harbor provision, which entitles a plaintiff to 60 additional days to correct "minor deficiencies" in the plaintiff's initial affidavit of expert disclosure. *Brown-Wilbert*, 732 N.W.2d at 215-16, 217; *see also* Minn. Stat. § 544.42, subd. 6(c). But a plaintiff is not entitled to the benefits of the safe harbor as a matter of course. *Brown-Wilbert*, 732 N.W.2d at 219-20. To invoke the safe-harbor provision, the plaintiff's initial affidavit of expert disclosure must provide some "meaningful information, beyond conclusory statements," that

> (1) identifies each person the attorney expects to call as an expert;
> (2) describes the expert's opinion on the applicable standard of care, as recognized by the professional community; (3) explains the expert's opinion that the defendant departed from that standard; and (4) summarizes the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries.

*Id.* at 219. This minimal showing serves the public policy of "avoid[ing] the waste of time and money spent on defending against frivolous actions that will ultimately be the subject of a directed verdict." *Id.* If the plaintiff's affidavit of expert disclosure does not satisfy the *Brown-Wilbert* factors, the safe-harbor provision does not apply and the district court must dismiss the plaintiff's case with prejudice. *Id.* at 215-16, 219-20; *see also* Minn. Stat. § 544.42, subd. 6(c). The legal sufficiency of an affidavit of expert disclosure is a question of law we review de novo. *See Schmitz*, 783 N.W.2d at 744.

### 1.     Initial Filing of Expert-Disclosure Affidavit

Respondents argue that this court should affirm the district court because appellant failed to file any documents that could satisfy the expert-disclosure affidavit requirements.[2]  We disagree.

If a plaintiff entirely fails to timely file an initial affidavit of expert disclosure or answers to interrogatories, the case must be dismissed with prejudice; a party may not invoke the safe-harbor provision to file a first affidavit of expert disclosure.  *See Middle River-Snake River Watershed Dist. v. Dennis Drewes, Inc.*, 692 N.W.2d 87, 91-92 (Minn. App. 2005).  Thus, if appellant failed to file documents that could satisfy the expert-disclosure requirement, his appeal would falter at this step.

Appellant acknowledges that he did not actually file a document entitled "affidavit of expert disclosure."  But appellant contends that the contents of his affidavit of expert review, which he referenced in his answers to interrogatories, satisfy the requirements for an affidavit of expert disclosure.  We agree.

Even respondents concede that an affidavit of expert review could, in some instances, satisfy the requirements of an affidavit of expert disclosure.  But they contend appellant's "initial affidavit of expert review specifically states that it is made only to fulfill the requirements of" an affidavit of expert review.  In support of their

---

[2] Although the district court did not address this argument in its order, respondents raised this alternative theory in the district court, and they may assert it again on appeal.  *See Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 332 (Minn. 2010).

14

argument, respondents rely on an unpublished case of this court, *Sheehan v. Suk*, No. A09-1383, 2010 WL 2035814 (Minn. App. May 25, 2010). In *Sheehan*, this court concluded that a plaintiff could not rely on a single affidavit to fulfill the requirements of both the affidavit of expert review and the affidavit of expert disclosure because she did not "clearly indicate the affidavit's dual purpose." *Id.* at \*4. This court reasoned that "[w]ithout a requirement that the plaintiff indicate an affidavit's dual purpose, a plaintiff filing a single affidavit could leave the defendants uncertain whether to exercise their statutory right to challenge inadequate affidavits." *Id.*

*Sheehan* is unpublished and holds no precedential value. *See* Minn. Stat. § 480A.08, subd. 3 (2012). Furthermore, unlike the plaintiff in *Sheehan*, appellant submitted answers to interrogatories within the 180-day period. A plaintiff may satisfy the expert-disclosure requirements through answers to interrogatories instead of providing a second affidavit. *See* Minn. Stat. § 544.42, subd. 4(a). In answer to an interrogatory requesting that appellant identify expert witnesses expected to testify, appellant stated, "Susan E. Johnson-Drenth, a Certified Elder Law Attorney (CELA), has been retained as an expert by Tim Guzick. *See the Affidavit of Expert Review*." (Emphasis added). Appellant contends that his reference to the affidavit of expert review essentially imported the document into his answer, thus allowing the district court to consider whether the contents of that affidavit also satisfy the requirements for an affidavit of expert disclosure.

15

The practice used by appellant is not addressed by section 544.42 or by the caselaw. However, *Brown-Wilbert* provides indirect support that such a practice is permitted. There, the appellant argued that it had satisfied the expert-disclosure requirements by "incorporating the . . . complaint [into] its answer to interrogatories." 732 N.W.2d at 219. The supreme court concluded that the information in the complaint, as incorporated by answers to interrogatories, did not provide sufficient information to satisfy the expert-disclosure requirements. *Id.* However, the supreme court did not take issue with the underlying premise that the appellant was permitted to incorporate the complaint into its answers to interrogatories. *See id.*

Thus, appellant could rely on his affidavit of expert review to establish the requirements of his affidavit of expert disclosure by incorporating it in his timely answers to interrogatories.

### 2. *Brown-Wilbert* **Factors**

Appellant argues that the district court erred by concluding that his answers to respondents' interrogatories and affidavit of expert review did not satisfy the *Brown-Wilbert* elements. We agree.

The district court concluded:

> [Appellant's] argument fails because the answers to interrogatories and expert review affidavit consist of restatements of the facts and broad, conclusory statements about causation. The information provided does not satisfy the statutory requirements. The answers and expert review affidavit say nothing about why Kimball's actions constitute negligence or malpractice, and they do not set

16

forth a causal link between Kimball's acts or omissions and [appellant's] harm. [Appellant] also fails to disclose the identity of expert witnesses to be called at trial. The expert review affidavit and interrogatory answers state that Susan Johnson-Drenth has been retained as an expert, but [appellant] does not identify her or any other experts as expected trial witnesses.

. . . .

[Appellant's] expert review affidavit and answers to interrogatories do not set forth the standard of care, nor do they present an expert opinion that Kimball's violation of the standard of care directly caused injury to [appellant]. The answers and affidavit recite the facts and argue that Kimball committed malpractice, but they do not explain how an expert used the facts to reach the conclusion that Kimball's acts constitute malpractice.

The district court essentially concluded that appellant failed to satisfy any of the *Brown-Wilbert* elements. Appellant challenges the district court's decision with respect to each element.

### a.    *Identity of Expert Witnesses*

Appellant argues that the district court erred by concluding that he failed to identify the expert witnesses he expects to call at trial. We agree.

The first *Brown-Wilbert* element requires the affidavit or interrogatory to "identif[y] each person the attorney expects to call as an expert." 732 N.W.2d at 219. Appellant's answer to an interrogatory clearly indicates that he intends to call Susan E. Johnson-Drenth as an expert witness. Interrogatory number seven states: "Identify each expert whom you expect to call at [sic] as a witness at trial." Appellant's answer states: "Susan E. Johnson-Drenth . . . has been retained as an expert." Although appellant's answer does not explicitly state that he intends to call Susan Johnson-Drenth as an expert

17

witness, he offered her name in response to a question asking only for information about experts he expects to call at trial; the implication is clear. Appellant's affidavit satisfies the first *Brown-Wilbert* element.

### b.      Standard of Care and Breach of the Standard of Care

Appellant next argues that the district court erred by concluding that he failed to identify the applicable standard of care and the breach of that standard of care. We agree.

The second and third *Brown-Wilbert* elements require the affidavit or interrogatory to "describe[] the expert's opinion on the applicable standard of care, as recognized by the professional community [and to] explain[] the expert's opinion that the defendant departed from that standard." *Id.*

Appellant's affidavit of expert review does not actually state the applicable standard of care as recognized by the professional community. Rather, the affidavit states that, in Johnson-Drenth's opinion, "Kimball breached his duty to use a reasonable degree of professional skill and learning possessed by attorneys in a similar practice and in like circumstances, and failed to use reasonable care, causing damages to [appellant]." By itself, this sentence might qualify as a "conclusory statement." *See id.* But appellant's affidavit also provides a detailed list of actions taken by Kimball that allegedly constitute a breach of the standard of care. For example, the list indicates that Kimball failed to supervise Bennett, failed to implement sufficient office procedures, and failed to speak with George to assess his competency and to ensure George understood the form. The standard of care is

18

clearly identified by these alleged breaches. Thus, appellant's affidavit satisfies the second and third *Brown-Wilbert* elements.

### c.    Causation

Appellant also argues that the district court erred by concluding that his affidavit did not set forth the necessary summary of his expert's opinion concerning causation. We agree.

The fourth prong of the *Brown-Wilbert* test requires the affidavit or interrogatory to "summarize[] the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries." *Id.*    In Minnesota, the term "direct cause" is synonymous with "proximate cause." *Curtis v. Klausler*, 802 N.W.2d 790, 793 (Minn. App. 2011), *review denied* (Minn. Oct. 18, 2011). Thus, the fourth *Brown-Wilbert* requirement appears most concerned with the disclosure of an expert's opinion on proximate cause, not on but-for causation.[3]

Above, we concluded that expert testimony would be helpful to address at least two facets of proximate cause in this case. First, expert testimony would help the jury understand the scope of the power-of-attorney form. Appellant's affidavit of expert

---

[3] Even if the fourth prong of the *Brown-Wilbert* test requires disclosure of an expert's opinion on but-for causation, such a disclosure is unnecessary in this case because we have already concluded that expert testimony on but-for causation is unnecessary. It would make little sense if *Brown-Wilbert* required expert disclosure on an element that requires no expert testimony. Furthermore, even if expert testimony is necessary to establish but-for causation in this case, we would conclude that appellant's affidavit of expert review contains sufficient information. The affidavit indicates that the respondents created a power-of-attorney form that authorized Tony to transfer George's property to himself, and that is precisely what Tony did.

19

review states, "[m]aking checkmarks on the lines on the form was how the principal gave authority to the attorney-in-fact to do various things, such as acting for the principal in gifting and banking transactions and transferring the property of the principal to the attorney-in-fact." The affidavit also states that Tony used his power-of-attorney form to take money from George's bank accounts. These statements illustrate the types of powers an attorney-in-fact may hold, and the statements also put the respondents on notice that the appellant's expert may opine about the scope of authorization.

Second, expert testimony is required to determine whether Tony's actions and the damages he caused were foreseeable. Although the word "foreseeable" does not appear in the affidavit of expert review, the affidavit adequately addresses the foreseeability of appellant's injuries. The affidavit states that respondents breached their duty to George by failing to assess George's competency, failing to determine whether George understood the breach of the power-of-attorney form, failing to discuss risks of granting broad powers to Tony, failing to determine whether Tony was an appropriate person to be George's attorney-in-fact. The affidavit then goes on to say:

> The acts and omissions of [Kimball] caused damages to [appellant] in the amount of $226,524, which is the total amount Tony Nyberg took from accounts owned by George Nyberg, his Estate, and his Trust using the subject Minnesota Statutory Short Form Power of Attorney that was provided to him by [Bennett], $168,852 in attorney's fees and $21,618 in costs incurred in [appellant's] lawsuits against Tony Nyberg . . . and against Wells Fargo.

Like proximate cause, the standard of care is circumscribed by the foreseeability of the injury suffered by a plaintiff. *See Connolly v. Nicollet Hotel*, 254 Minn. 373, 381, 95 N.W.2d 657, 664 (1959) (stating that the "common-law test of duty is the . . .

20

foreseeability of injury to the plaintiff") (citing *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928)). By identifying the standard of care, the manner in which respondents breached that standard, and the injuries suffered by appellant, the affidavit necessarily implies that the injuries arising from the breaches were foreseeable. Because the affidavit discloses the expert's opinion that the injuries are foreseeable in the context of the standard of care, the affidavit also necessarily discloses the expert's opinion that the injuries suffered by the appellant, or damages, are foreseeable for purposes of proximate cause. Thus, appellant's affidavit satisfies the fourth prong of the *Brown-Wilbert* test.

In sum, we conclude that appellant's affidavit of expert review and answers to interrogatories are sufficient to satisfy the minimum expert-disclosure requirements identified in *Brown-Wilbert*. Therefore the district court erred by granting summary judgment to the respondents.

**Reversed and remanded.**

21

**JOHNSON**, Judge (dissenting)

I respectfully dissent from the opinion of the court. Although I agree with my colleagues in many respects, I disagree in two ways. First, this case is not one of those rare or exceptional legal-malpractice cases in which the plaintiff should be relieved of the requirement to introduce expert evidence to prove causation. Second, Guzick's expert disclosure does not satisfy the minimum disclosure requirements with respect to the issue of causation. My disagreement on these two issues necessarily leads me to a different result.

**A.**

In *Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811 (Minn. 2006), the supreme court distinguished between proximate cause and but-for cause by separately identifying them as the third and fourth elements of a *prima facie* case of legal malpractice. *Id.* at 816. In part A.2., the opinion of the court concludes that Guzick must introduce expert evidence to establish proximate cause, the third element, but need not introduce expert evidence to establish but-for cause, the fourth element. I would conclude that expert evidence also is required with respect to but-for cause.

At the outset, it should be noted that the power-of-attorney form that George Nyberg signed does not compel the conclusion that Kimball was negligent *per se*. The particular version of the standard form that George Nyberg signed is one of the possibilities contemplated and suggested by the legislature in the statutory short form. *See* Minn. Stat. § 523.23, subd. 1 (2012). Guzick's expert does not intend to testify that

Kimball was negligent solely because of the content of the form that George Nyberg signed. Rather, she has opined that Kimball was negligent because he never had a conversation with George Nyberg in which his situation and his goals could be fully explored so that Kimball could advise him of the most appropriate course of action.

If Kimball breached his professional duty in the manner described by Guzick's expert, it would be necessary to determine what would have happened if Kimball had not committed a breach. *See Jerry's Enters., Inc.*, 711 N.W.2d at 820; *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 741 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010); *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 813 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007). An attorney who previously has counseled persons in George's situation would have much to say on the subject. For example, an experienced attorney likely would testify about, among other things, the issues that an attorney should discuss with a client who wishes to grant a power of attorney, the risks that the attorney should seek to identify, and the situations in which the various options provided by the short form are appropriate or inappropriate. Those topics go directly to issues of duty and breach as well as the issue of causation. With respect to causation, an experienced attorney likely would also testify about, among other things, the advice that attorneys typically give to clients on this subject based on various factors, the frequency with which clients accept an attorney's advice on the subject, and the incidence of malfeasance by persons who are granted the authority of an attorney-in-fact. These are mere examples.

These issues and related issues are not matters that lay jurors are likely to know or to understand without expert testimony. In fact, the law forbids a person from providing advice concerning the granting of a power of attorney and from preparing a power-of-attorney form without a valid license to practice law. *See* Minn. Stat. § 481.02, subd. 1 (2012) (prohibiting "unauthorized practice of law," which includes providing legal services and preparing legal documents); *In re Disciplinary Action Against Ray*, 610 N.W.2d 342, 346 (Minn. 2000) (disbarring attorney who prepared power-of-attorney form and performed other legal services on suspended license). If lay persons are prohibited from providing any services with respect to a power-of-attorney form, they cannot reasonably be expected to decide matters of negligence and causation unless they have the benefit of the input of an attorney with expertise in the subject matter.

It is well established that expert testimony generally is necessary to prove causation in a legal-malpractice case. *See Admiral Merchs. Motor Freight v. O'Connor & Hannan*, 494 N.W.2d 261, 266 (Minn. 1992); *Schmitz*, 783 N.W.2d at 741; *Fontaine v. Steen*, 759 N.W.2d 672, 678-79 (Minn. App. 2009); *see also Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 218 & n.4 (Minn. 2007). More specifically, we have affirmed the dismissal of a plaintiff's legal-malpractice claim on the ground that he was "required to produce expert testimony on the issue of but-for causation" but "did not do so." *Schmitz*, 783 N.W.2d at 741. The Minnesota appellate courts have said that a plaintiff may establish causation without expert evidence only in a "rare" or "exceptional" legal-malpractice case. *See, e.g.*, *Hill v. Okay Constr. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977); *Schmitz*, 783 N.W.2d at 741; *Fontaine*, 759 N.W.2d at

678-79; *Thomas A. Foster & Associates, Ltd. v. Paulson*, 699 N.W.2d 1, 8 (Minn. App. 2005). My research reveals only one "rare" or "exceptional" case in which a plaintiff actually was excused from the requirement. *See Hill*, 312 Minn. at 337, 252 N.W.2d at 116. This case is not so rare or exceptional that it should become the second such case.

**B.**

In *Brown-Wilbert*, the supreme court held that an expert disclosure must, at a minimum, "summarize[] the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries." 732 N.W.2d at 219. In part B.2.c., the opinion of the court concludes that Guzick's expert disclosure satisfies the disclosure requirements of *Brown-Wilbert*. I would conclude that Guzick's expert disclosure is so lacking in information concerning causation that it does not satisfy the minimum disclosure requirement.

As an initial matter, I do not accept the premise that the term "direct cause" is equivalent to "proximate cause" such that *Brown-Wilbert* is concerned only with proximate cause and not with but-for cause.[4] In any event, the statute governing expert

---

[4]In an ordinary negligence case, the supreme court generally tends to combine the concepts of cause-in-fact and proximate cause into what is referred to as the "substantial factor test": a "negligent act is a direct, or proximate, cause of harm if the act was a substantial factor in the harm's occurrence." *See George v. Estate of Baker*, 724 N.W.2d 1, 10 (Minn. 2006); *see also* Mike Steenson, *Minnesota Negligence Law and the Restatement (Third) of Torts: Liability for Physical and Emotional Harms*, 37 Wm. Mitchell L. Rev. 1055, 1109-10 (2011). In such cases, the courts seem to use the terms "direct cause," "proximate cause," and "substantial factor" interchangeably. *See, e.g.*, *Curtis v. Klausler*, 802 N.W.2d 790, 793 (Minn. App. 2011), *review denied* (Minn. Oct. 18, 2011). In professional negligence cases, the supreme court has maintained a distinction between the concepts of cause-in-fact and proximate cause. *See Brown-Wilbert, Inc.*, 732 N.W.2d at 218 n.4; *Jerry's Enters., Inc.*, 711 N.W.2d at 819. Cause-in-

disclosures uses the word "causation." *See* Minn. Stat. § 544.42, subd. 4(a) (2012). The statute does not limit the disclosure obligation to the issue of proximate cause. *See id*. Likewise, *Brown-Wilbert* more often uses the terms "causation" and "cause." *See* 732 N.W.2d 217-19. Given that the caselaw requires plaintiffs to prove both proximate cause and but-for cause to establish a claim of professional negligence, *see Brown-Wilbert, Inc.*, 732 N.W.2d at 218 n.4; *Jerry's Enters., Inc.*, 711 N.W.2d at 820, and given that the caselaw almost always requires plaintiffs to introduce expert evidence on both proximate cause and but-for cause, *see Schmitz*, 783 N.W.2d at 741, the legislature likely did not intend to relieve a plaintiff of the disclosure obligation on but-for cause in all professional-negligence cases. Accordingly, I do not read *Brown-Wilbert* to say that a plaintiff is not required by section 544.42 to disclose its expert opinions on but-for cause.

In *Brown-Wilbert*, the supreme court described the minimum disclosure that is necessary to warrant an opportunity to cure a deficient affidavit. 732 N.W.2d at 219; *see also* Minn. Stat. § 544.42, subd. 6(c). The disclosure must "provide some meaningful information, beyond conclusory statements, . . . [that] summarizes the expert's opinion" with respect to causation. *Brown-Wilbert, Inc.*, 732 N.W.2d at 219. The disclosure "should set out how the expert will use those facts to arrive at opinions of malpractice and causation." *Id.* (quotation and emphasis omitted). A disclosure that "merely

_____

fact is determined by applying a but-for analysis, and proximate cause is determined by asking whether the plaintiff's injury or harm was a foreseeable consequence of defendant's advice. *See Brown-Wilbert, Inc.*, 732 N.W.2d 218 n.4; *Jerry's Enters., Inc.*, 711 N.W.2d at 819. Thus, although "direct cause" and "proximate cause" may be interchangeable terms in ordinary negligence cases, that does not appear to be true in professional negligence cases.

repeat[s] or incorporate[s] the attorney's conclusory allegations about malpractice [is] not sufficient to meet the minimum standards for an affidavit of expert disclosure." *Id.* (emphasis omitted).

In this case, the expert's disclosure concerning causation is contained in a single sentence:

> The acts and omissions of Larry Kimball and Kimball Law described above caused damages to Tim Guzick in the amount of $226,524, which is the total amount Tony Nyberg took from accounts owned by George Nyberg, his Estate, and his Trust using the subject Minnesota Statutory Short Form Power of Attorney that was provided to him by Colleen Bennett of Kimball Law . . . .

This conclusory disclosure falls far short of the minimum standards identified in *Brown-Wilbert*. The disclosure could not possibly be any more conclusory or any less meaningful. The disclosure does not attempt to state "the substance of the facts and options to which the expert is expected to testify" and does not provide "a summary of the grounds for each opinion" regarding causation. Minn. Stat. § 544.42, subd. 4(a); *see also Brown-Wilbert, Inc.*, 732 N.W.2d at 219. The deficiencies in Guzick's expert disclosure "are so great that it provides no significant information." *Id.* at 217. If Guzick's expert disclosure satisfies *Brown-Wilbert*'s minimum requirement concerning causation, that requirement is essentially rendered meaningless.

I also disagree with the conclusion that Guzick has gone beyond the minimum disclosure necessary for an opportunity to cure by making a disclosure that fully satisfies the statutory requirement. The deficiency of Guzick's expert disclosure is demonstrated by the caselaw in the analogous context of medical-malpractice expert disclosures. *See*

*id.* A "single sentence on causation is insufficient." *Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn. App. 2006). An expert disclosure must give more than a "sneak preview" and must "explain[] to the jury the 'how' and the 'why' the malpractice caused the injury." *Teffeteller v. University of Minn.*, 645 N.W.2d 420, 429 n.4, 430 (Minn. 2002). An expert disclosure must include "specific details" of the expert's opinion, including "an outline of the chain of causation that allegedly resulted in damage[s]." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990). Furthermore, the substance of the disclosure must be expressed; it may not be implied from statements concerning duty or breach. *See Teffeteller*, 645 N.W.2d at 429; *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 556 (Minn. 1996). Guzick's expert disclosure does not fulfill these requirements.

The supreme court has recognized in the medical-malpractice context that statutory expert-disclosure requirements "may have harsh results in some cases" but are enforced nonetheless. *See Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 578 (Minn. 1999). The supreme court also has noted that any harshness is mitigated by the fact that "previous decisions of this court . . . provide[] some degree of notice" to plaintiffs' counsel of the expert-disclosure requirements. *Anderson v. Rengachary*, 608 N.W.2d 843, 849 (Minn. 2000).

For these reasons, I would affirm the district court's entry of summary judgment in favor of Kimball, the Kimball Law Firm, and Kimball and Undem.